332 F.Supp. 640 (1971)
UNITED STORES OF AMERICA, INC., a corporation, Plaintiff,
v.
INSURANCE CONSULTANTS, INC., a corporation, Defendant.
No. 70 C 361(4).
United States District Court, E. D. Missouri, E. D.
November 5, 1971.
*641 Goldenhersh & Newman, St. Louis, Mo., for plaintiff.
Stolar, Heitzmann & Eder, Alan C. Kohn, Evans & Dixon (co-counsel), St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This is an action to recover damages allegedly sustained by reason of plaintiff's being underinsured on fire insurance coverage. Plaintiff, a discount store, is a Delaware corporation. Defendant, an insurance agency, is a Missouri corporation. The amount in controversy exceeds $10,000.00 exclusive of costs and interest. This Court has jurisdiction by virtue of 28 U.S.C. § 1332(a).
In its complaint, plaintiff alleged that defendant contracted with plaintiff and obligated itself to secure for plaintiff, fire and extended coverage insurance in the amount of $502,800, and that defendant breached its contractual obligation in that it only obtained $168,700 of fire insurance. Plaintiff also alleged that defendant was negligent in its failure to procure the desired coverage. A fire occurred on April 4, 1966, resulting in an agreed loss of $474,014, and plaintiff seeks to recover the difference between that amount of damage and the amount of insurance actually obtained, the amount sought being $305,314.
Defendant denied the alleged contractual obligation and the alleged negligence. Defendant alleged that plaintiff was negligent. By amended answer, filed after the cause was heard, defendant raised the defense of estoppel and alleged that plaintiff failed to prove that it had sustained the loss.
The matter was tried to the court without a jury. Jack R. Smith was at all relevant times president of Jack R. Smith Insurance Agency Company, a Missouri corporation, acting as an insurance agent and broker. After the occurrence of the loss involved here, defendant Insurance Consultants, Inc. succeeded to the rights and liabilities of Jack R. Smith Insurance Agency Company by statutory merger. As a practical matter, Smith handled all matters for defendant with respect to this controversy.
B. David Kaplan was plaintiff's vice president and general manager at all relevant times, but has since left plaintiff's employ and resides outside the jurisdiction of this Court. Kaplan's testimony was presented by deposition and by affidavit.
Plaintiffs' store was located in Collinsville, Illinois. The property damaged by the fire was owned by Jerry Spitzer and his wife, who leased the property to plaintiff. Spitzer and his wife are the sole stockholders in plaintiff corporation. The testimony of both Kaplan and Spitzer shows that Kaplan had full responsibility and authority with respect to the management of the store. Specifically with respect to the insurance matters here involved, the testimony was that Spitzer knew nothing about what happened and that Kaplan handled it all. The Court finds plaintiff is bound by the acts of Kaplan.
Much of the evidence concerning the events giving rise to plaintiff's claim is essentially undisputed. In May, 1964, Kaplan called Smith to inquire if Smith would be interested in placing insurance for plaintiff. As a consequence, Smith reviewed plaintiff's existing policies and conducted a survey to determine if the existing policies were fitted to plaintiff's needs. Smith placed, or replaced, most of plaintiff's insurance in 1964, including liability, workmen's compensation, fidelity and others, and thereafter serviced the plaintiff's insurance.
*642 Smith also surveyed the existing fire and extended coverage policies. Plaintiff was insured through the Florist Mutual Agency with Interstate Fire & Casualty Company in the amount of $502,800. The policies listed plaintiff as the named insured. Smith attempted to place the fire insurance with companies he represented, but except for a token commitment, conditional upon obtaining a financial statement, was unable to do so. The insurance companies he contacted were not interested in discount stores.
The Interstate policies were issued for a three-year term, effective November 13, 1963 to November 13, 1966, with premiums payable annually. Smith advised Kaplan to pay the annual premium due November 13, 1964, and to keep plaintiff's fire insurance with Interstate. Plaintiff did this. It was Smith's intention to obtain an agent-of-record letter at the expiration of the Interstate policies, and to continue the insurance in that company, with himself acting as agent.
In October 1965, Interstate advised plaintiff that it was cancelling its policies effective November 13, 1965. Kaplan called Smith and the matter was discussed. Conflicting testimony was adduced as to the import of the conversation. Kaplan stated that he requested Smith to place the coverage in the same amount and that Smith committed himself to do so. Smith testified that he reminded Kaplan of earlier unsuccessful attempts and the likely difficulty in placing the risk, but that he would get as much insurance as he could as soon as he could.
With respect to the credibility of the testimony the Court finds Smith's testimony to be more believable. The evidence showed that Smith is an expert in the insurance business. Plaintiff's discount store operation was a risk that was difficult to place in most circumstances. In this case, the previous fire policy had been cancelled which added to the risk. Evidence was also produced to the effect that plaintiff's store was not sprinklered, but that a sprinkler system enhances the chances of obtaining coverage (and also reduces the rate). Smith and Kaplan were aware of Smith's unsuccessful efforts the year before in obtaining fire coverage for plaintiff. Smith testified at length, with consistency and directness. In view of these facts, it seems unreasonable that Smith, an experienced insurance man, would have absolutely committed defendant to obtain insurance in the amount of $502,000. Kaplan's testimony reveals that he was not knowledgeable in insurance generally or in the specific insurance concerns of plaintiff. The deposition is significant in the absence of recollections by Kaplan as to such matters as why he changed insurance agents, whether he read the prior policies, whether he made any memorandum of the alleged agreement to Smith, whether premium was discussed, or the names of the insurers. Kaplan's testimony also reflects that he worked long hours, seven days a week, in the management of plaintiff's store, a fact which may explain his vagueness on the details of but one of his responsibilities.
While none of the above factors is conclusive on the issue of believability, the Court finds that reason supports Smith's testimony. There is nothing before the Court, other than Kaplan's testimony, to impeach Smith's testimony or to indicate any reason why Smith would have acted unreasonably. The Court finds the weight of the evidence to be in defendant's favor on this issue.
Smith approached his own companies with requests for insurance but was only partially successful. He made efforts to have Interstate revoke its cancellation, but was refused. He contacted several agents and agencies in the St. Louis area, representing a large number of insurance companies, but for the most part was declined. He approached agencies in Chicago who dealt in such risks, but without success. Smith did obtain, from time to time, four policies aggregating $168,700.
*643 As each of these policies was obtained, it was delivered to Kaplan, and bills were sent to Kaplan showing the amount, policy number and name of the carrier. A policy with the Fund-American Insurance Company was billed in November, 1965. A policy with the Great Northern Insurance Company was billed in December, 1965. A Lloyd's policy was billed in February 1966. Smith was unable to obtain any further insurance.
Kaplan testified that he was unaware of the difficulty Smith was encountering and relied solely on Smith's alleged commitment to obtain coverage in the same amount as the cancelled policies. Smith testified that he kept Kaplan fully informed on his efforts to obtain fire insurance coverage. The Court finds that plaintiff was aware of the defendant's difficulty in placing the insurance, particularly, since plaintiff was aware of the policies Smith was able to obtain, which were delivered to Kaplan and in his possession.
The plaintiff places great reliance upon a letter dated October 25, 1965, from Kaplan to Smith enclosing the cancellation notices and stating in pertinent part:
"As per my conversation with you on the telephone today would appreciate your covering these policies for us".
However, Kaplan's testimony is to the effect that the letter did not evidence a meeting of the minds. (Kaplan deposition, pp. 28-29).
The Court finds, as a fact, that Smith did not commit himself to procure $502,800 fire and extended coverage insurance as alleged. The facts of this case show that within the reasonable comtemplation of the parties Smith only agreed to do the best he could as soon as he could. This he did. The Court finds as a fact that the only commitment made by the defendant to plaintiff was to do what he could and that there is no evidence from which an agreement could be assumed that the defendant, or Smith, agreed to furnish any specified fire and extended coverage on the property which was subsequently destroyed by fire. There is also no believable evidence from which it could be inferred that Smith was negligent in his efforts on behalf of plaintiffs.
It seems to be well settled that an insurance agent or broker who undertakes to provide insurance for another, and by his own fault or neglect fails to do so, is liable in the amount that would have been due under the policy of insurance if it had been obtained. See, e.g. Butler v. Scott, 417 F.2d 471 (10th Cir. 1969); Consolidated Sun Ray Inc. v. Lea, 401 F.2d 650 (3rd Cir. 1968) cert. denied, 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).
Volume 16, Appleman "Insurance Law and Practice" § 8841, p. 510 states:
"Liability of Broker-Failure to Procure Insurance. An insurance broker is the agent of the insured in negotiating for a policy, and owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting insurance. Thus he may be held liable where he has breached a contract to procure insurance for his principal. And while such broker is not obligated to assume the duty of procuring a policy, without consideration for his promise, he must exercise ordinary care in the performance of such duty when assumed, the promise to take the policy being a sufficient consideration. He is charged with the exercise of reasonable care and skill in making inquiries and obtaining information concerning the responsibility of the insurer with whom they place [sic] the risk, and is liable for any loss occasioned by such want of care. If a broker or agent of the insured neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective, through the agent's fault, he is liable to his principal for any loss he may have sustained thereby. If the agent or broker fails to act with the proper and customary skill and care generally used by those in a like business, such *644 neglect or breach of duty will render him liable in damages, not exceeding the amount of insurance he was employed to effect. It has been held that such principal may sue either for breach of contract or in tort for a breach of duty. It is generally considered that if the neglect or breach of duty of such broker results in loss to his principal, the broker is liable to the same extent as the insurer would have been liable had the insurance been properly effected, and must pay the resulting loss." (Notes to the text omitted).
In the present case the Court, having found that defendant did not undertake to procure insurance coverage of a specified amount for plaintiff, and did not fail to exercise ordinary care, finds the defendant is not liable to plaintiff under the above principles.
In view of the Court's findings, it is unnecessary to determine the issues of plaintiff's negligence, estoppel or whether or not plaintiff sustained the loss.
Judgment will be entered in favor of defendant and against plaintiff.