577 F.Supp. 1361 (1983)
Robert G. BELL and Gevodia Bell, Plaintiffs,
v.
James O'LEARY, Shelter Mutual Insurance Company and Federal Emergency Management Agency, Defendants.
Edward L. BONI and Patricia A. Boni, Plaintiffs,
v.
James O'LEARY, Shelter Mutual Insurance Company and Federal Emergency Management Agency, Defendants.
Nos. 81-1422 C (D), 81-1597 C (D).
United States District Court, E.D. Missouri.
December 27, 1983.
*1362 Anzalone & Geissal, Richard L. Geissal, Jr., Clayton, Mo., for plaintiffs.
Bruce D. White, Asst. U.S. Atty., St. Louis, Mo., for Federal Emergency Management Agency.
William B. England, St. Louis, Mo., for James O'Leary.
Godfrey, Vandover & Burns, James E. Godfrey, St. Louis, Mo., for Shelter Mut. Ins. Co.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court for a decision upon the merits. The parties in each case, having engaged in discovery and established their respective legal positions, have entered into a Stipulation of Fact and submitted each case to the Court for a final decision. Both cases were filed in the state court and removed to this Court pursuant to 28 U.S.C. § 1446(e), and subsequently consolidated by Order of this Court dated July 8, 1982.
Plaintiffs herein seek recovery on flood insurance policies issued under authority of federal statute. After the policies were issued and the premiums paid, each plaintiff sustained a loss and filed a claim, only to discover that the residences purportedly insured were in fact not eligible for the coverage because they were located outside an incorporated area of Lincoln County, Missouri.
*1363 After consideration of the Stipulation of Fact,[1] the exhibits attached thereto, the briefs of the parties and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact or conclusion of law which is applicable as a conclusion of law or finding of fact, respectively, is hereby adopted as such.

Findings of Fact

A. Bell, et al. v. O'Leary, et al.

1. Between December 29, 1976 and January 14, 1977 plaintiffs requested that defendant O'Leary procure flood insurance on behalf of plaintiffs, and defendant O'Leary wrote an application for flood insurance for plaintiffs' residence, a mobile home located at Lot 22, Melloway Manor in Winfield, Missouri.
2. Defendant O'Leary submitted this application to M.F.A. Insurance Company, now known as Shelter Mutual Insurance Company (hereinafter Shelter). Between 1968 and 1978, the National Flood Insurance Program (hereinafter N.F.I.P.) was administered by the National Flood Insurers Association (hereinafter N.F.I.A.), a voluntary unincorporated group of insurance companies, pursuant to an agreement with the Department of Housing and Urban Development (hereinafter H.U.D.). Under this contract, N.F.I.A. issued and serviced individual policies of flood insurance and processed claims for losses. H.U.D. was the underwriter for the program and determined both the risks to be written and the premiums to be paid for those risks.
The agreement executed with N.F.I.A. terminated on December 31, 1977, and effective January 1, 1978, H.U.D. assumed the complete administration of the N.F.I.P. and became the sole insurer of all outstanding Standard Flood Insurance Policies. Additionally, H.U.D. assumed all servicing operations previously performed by N.F.I.A. and its servicing companies such as Shelter. On April 1, 1979, Executive Order 12127, 44 Fed.Reg. 19367, transferred to the Federal Emergency Management Agency (hereinafter F.E.M.A.) the operation of a National Flood Insurance Program.
3. On plaintiffs' application for flood insurance, defendant O'Leary identified the plaintiffs' property as located in Winfield, Missouri (which is a participating community). The subject property is located in an unincorporated area of Lincoln County which had not been approved for coverage by N.F.I.P. O'Leary also marked an "x" in a box on the application, indicating that the property was located in an unincorporated area of the County.
4. Defendant O'Leary submitted the application to defendant Shelter (at that time M.F.A.), which processed it based upon a property location of Winfield, and issued Policy No. FL 773 574 32 to plaintiffs, effective January 14, 1977.
5. After the issuance of said flood insurance policy, Shelter forwarded a copy of said application to N.F.I.P., which did not reject said application at that time.
6. On January 1, 1978, Shelter was terminated as a servicing agency.
7. Plaintiffs renewed this policy in 1978, 1979 and 1980.
8. After the issuance of said policy, plaintiffs bought and procured a newer and more valuable mobile home than had been on the premises previously, and plaintiffs bought and procured newer and more expensive furniture, furnishings, and appliances than had been on said premises previously, which was reported to O'Leary.
*1364 9. On April 11, 1979, plaintiffs' property was flooded.
10. Defendant F.E.M.A. hired an adjuster to evaluate plaintiffs' claim for damages and assess the extent of the damage. Although plaintiffs allege damage in the amount of Eleven Thousand Nine Hundred Eighteen Dollars ($11,918), the adjuster determined that the property sustained damage in the amount of Five Thousand Six Hundred Dollars ($5,600), and the policy itself limited liability to Five Thousand Six Hundred Dollars ($5,600).
11. After the flood, when plaintiffs presented notice of their claim for damages, N.F.I.P. denied plaintiffs' claim and refunded their premium payments.
12. On November 9, 1981, the United States filed a petition for removal, thereby removing this matter from the Circuit Court of St. Louis County to the United States District Court for the Eastern District of Missouri. On the same day, the United States filed a motion for substitution of party defendant and a memorandum in support thereof.

B. Boni, et al. v. O'Leary, et al.

13. In March, 1978, defendant O'Leary wrote an application for flood insurance on the residence of plaintiffs Edward L. Boni and Patricia A. Boni (hereinafter referred to collectively as Boni), a mobile home located at Lot 9, McDonald Subdivision, Lincoln County, Missouri. At that time, defendant O'Leary advised Boni that "we can write flood insurance in Lincoln County."
14. O'Leary submitted this application to the N.F.I.P. servicing company, Electronic Data Systems, Inc. (hereinafter E.D. S.). As of January 1, 1978, H.U.D. administered the N.F.I.P., contracting with E.D.S. to perform its servicing operations, such as receiving applications and premiums payments, issuing policies and processing claims for losses. On April 1, 1979, Executive Order 12127, 44 Fed.Reg. 19367, transferred to the F.E.M.A. the operation of the National Flood Insurance Program.
15. On plaintiffs' application for flood insurance, defendant O'Leary identified the property to be insured as located in Lincoln County, Missouri, and indicated that the plaintiffs live in Florissant, Missouri. He also indicated that the property was located in an unincorporated area of the county and left blank the space provided for the community number.
16. Defendant O'Leary submitted the application to E.D.S. (servicing agent for the N.F.I.P.), which processed it based upon a mistake by E.D.S. that the property was located in Florissant, Missouri, and issued Policy No. FL 909114 39 to plaintiffs, effective March 26, 1978. The subject property was located in an unincorporated area of Lincoln County which had not been approved for coverage by N.F.I.P.
17. After defendant O'Leary sold Boni the insurance, no further effort was made by O'Leary to verify the validity of the policy.
18. On April 11, 1979, plaintiffs' property was flooded.
19. Defendant F.E.M.A. hired an adjuster to evaluate the plaintiffs' claim for damages and assess the extent of the damage. Although plaintiffs allege damage in the amount of Thirty Five Thousand Dollars ($35,000), the policy at issue limits liability to Sixteen Thousand Dollars ($16,000).
20. After the April 11, 1979 flood, plaintiffs filed a Notice of Loss. No proof of loss forms were furnished to Boni, nor did Boni file one with N.F.I.P.
21. On December 16, 1981, the United States filed a petition for removal, removing this matter from the Circuit Court of St. Louis County to the United States District Court for the Eastern District of Missouri. On April 8, 1982, the United States filed a motion for substitution of party defendant, along with a memorandum in support thereof.

Conclusions of Law
The Court's conclusions of law are necessarily more limited than what is sought by the parties. Although considerable effort has been devoted to briefing issues of relative liabilities of the various co-defendants, *1365 those questions are not before the Court. No cross-claims or third party actions for indemnity or contribution were ever filed in either matter to put such questions at issue. Hence, this Opinion addresses only the liabilities between the plaintiffs and each separate defendant. Co-defendant liability is left for litigation at a later date if those parties so desire.

A. Defendant Federal Emergency Management Agency.

The Court begins with the fundamental principle that where Congress authorizes the issuance by an agency of the government of a specific type of insurance under specific conditions, and where a policy is thereafter issued which does not meet those conditions, that policy is void and of no legal effect. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Plaintiffs herein, however, assert the argument that in a situation where a government agency has issued an invalid policy and the insured has relied to his detriment on that policy, the government should be estopped from disclaiming coverage. Such a theory has been much litigated since the Merrill decision was handed down, in an effort to avoid its harsh consequences. See generally, Annotation, Modern Status of Applicability of Doctrine of Estoppel Against Federal Government and Its Agencies, 27 A.L.R. Fed. 702 (1973).
The guidance provided by the courts with regard to this issue has been less than uniform. Many courts have permitted the defense of estoppel only where the government is acting in a proprietary, as opposed to a sovereign capacity. See, e.g., U.S. v. State of Florida, 482 F.2d 205, 209 (5th Cir.1973). Others have been more lenient, and permitted estoppel against the government where justice and fair play require it, or to prevent manifest injustice. U.S. v. Lazy F.C. Ranch, 481 F.2d 985, 988 (9th Cir.1973); Walsonavich v. U.S., 335 F.2d 96, 101 (3rd Cir.1964); Massaglia v. Commissioner of Internal Revenue, 286 F.2d 258, 262 (10th Cir.1961).
The Eighth Circuit followed the general rule for many years that "the doctrine of estoppel is not applicable against the United States." Dix v. Rollins, 413 F.2d 711, 716 (8th Cir.1969). See also Stone v. U.S., 286 F.2d 56, 59 (8th Cir.1961). Some more recent opinions, however, have backed off the strict rule against estoppel against the government, but nevertheless denied the defense based upon a strict interpretation of the elements of estoppel. See, e.g., U.S. v. Victory Highway Village, Inc., 662 F.2d 488, 496-97 (8th Cir.1981) (grounds for estoppel were "unsupported in this case"); U.S. v. Regan, 503 F.2d 234, 239 (8th Cir. 1974) ("we find nothing in the record to justify estoppel"). As noted in 28 Am. Jur.2d, Estoppel and Waiver, §§ 76-78 cited by the Court in Regan, the party asserting estoppel must show the following under the traditional analysis:
(1) The party to be estopped knew the facts;
(2) The party to be estopped intended that his conduct be relied upon, or acted in a manner to justify such reliance;
(3) The party asserting estoppel was ignorant of the facts; and
(4) The party asserting estoppel reasonably relied on the other's conduct and was substantially injured as a result.
The Supreme Court in United States Immigration & Naturalization Service v. Hibi, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) left open the possibility that estoppel could under certain circumstances be asserted against the federal government. The Hibi court found, however, that since there was no "affirmative misconduct" on the part of the government there could be no estoppel. Id. at 8-9, 94 S.Ct. at 21-22. Subsequently the Supreme Court denied the estoppel defense to a Social Security claimant who had been misinformed by a government employee about her eligibility, because such misinformation did not amount to affirmative misconduct. Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). Thus, under modern law, affirmative misconduct is considered to be an additional element *1366 for a valid estoppel defense against the federal government. Vickars-Henry Corp. v. Board of Governors of the Federal Reserve System, 629 F.2d 629, 635 (9th Cir.1980).
It seems clear, on the basis of these cases and subsequent lower court cases, that affirmative misconduct, as well as the traditional elements of estoppel noted above, must be present to bind the federal government under the doctrine of estoppel. See TRW, Inc. v. Federal Trade Commission, 647 F.2d 942, 950-51 (9th Cir.1981).
Applying the above standards to the present case, the Court concludes there can be no estoppel. First, the stipulations filed in both cases fail to establish that the plaintiffs were ignorant of the fact that their properties were not eligible for coverage. F.E.M.A. argues that the information was published periodically in the Code of Federal Regulations and that plaintiffs therefore had constructive knowledge under Merrill, 332 U.S. at 384-85, 68 S.Ct. at 3-4. While the fact of such publication is not established by the stipulations, either, the Court finds that plaintiffs have failed to carry their burden of proof. Second, the stipulations failed to establish that plaintiffs relied upon the policy to their detriment. All the defendants argue that flood insurance would not have been available from any other source and, hence, no prejudice resulted. There is nothing in the stipulation contrary to this to carry plaintiffs' burden. The mere fact that the Bells moved in more expensive property after the policy was issued is insufficient since there was no stipulations that they would not have done so in the absence of such a policy. Finally, there is nothing in the stipulation which would amount to affirmative misconduct on the part of the government. At worst, the government was negligent in issuing the policy (or in Bells' case, reissuing the policy) with information establishing non-qualification on the face of the application. Affirmative misconduct, however, is more than mere negligence. Simon v. Califano, 593 F.2d 121, 123 (9th Cir.1979). Certainly the government's conduct in this case is no more blameworthy than that in Hibi or Hansen.
In view of the above considerations, the Court finds there is no liability on the part of the F.E.M.A. to either plaintiff.[2]

B. Defendant Shelter Mutual Insurance Company.

Plaintiff Bell argues that defendant Shelter is liable for the loss on a negligence cause of action. Bell argues that Shelter had a duty to accurately screen its application to determine whether the property was qualified for coverage, which duty Shelter breached by improperly assigning a community number to the application and issuing a policy. On the facts presented in this stipulation, however, the Court finds no such liability.
Shelter received the application and issued the original policy to Bell in January, 1977. That policy expired on December 31, 1977. On January 1, 1978, the Flood Insurance Program was transferred in its entirety to H.U.D., which thereafter became the issuer of the policy.
The renewal of an insurance policy constitutes a separate and distinct contract for the period of time covered by renewal. Matter of Supreme Meat Co., 73 F.R.D. 295, 296 (E.D.Mo.1976). Thus, when the policy was renewed on January 1, 1978 and January 1, 1979, H.U.D. (and not Shelter) was the issuer of the policy. After the April, 1979 loss, therefore, plaintiffs claimed under a contract to which Shelter was not a party.
Nor could Shelter's failure to obtain valid coverage be considered to be the proximate cause of Bells' ultimate loss. The renewal of the policy by F.E.M.A. without checking the information on the original application would appear to be a foreseeable intervening cause. However, Shelter's duty could not be said to include obtaining coverage which did not legally *1367 exist. And plaintiffs have failed to establish a duty on the part of the issuing agency (as opposed to a broker) to inform the policyholder in the event of a failure to issue a valid policy. Hence, there could be no breach of a duty by Shelter, and the action against Shelter must fail.[3]
The stipulations also fail to establish Shelter's liability to plaintiff Boni. Although Shelter was originally named as a defendant and alleged to be the issuing company, the parties' stipulation provides that E.D.S. was the servicing company and makes no mention of Shelter. Thus, no liability on the part of Shelter has been established.

C. Defendant James O'Leary.

Both sets of plaintiffs argue that O'Leary is liable to them for breach of a contract to obtain flood insurance, as well as for breach of a duty owed to them as their insurance agent (e.g., negligence). As to the claim for breach of contract, the Stipulation of Fact establishes that the policy requested could not be legally obtained, and therefore a defense of impossibility of performance would bar recovery. See generally, 17 Am.Jur.2d, Contracts, § 404 et seq.
The negligence claim is more viable. The stipulations establish that plaintiffs requested O'Leary to procure flood insurance and that O'Leary undertook to do so. The stipulations show further that O'Leary wrote an application, correctly noted on the application that the property was located in an unincorporated portion of the County, and submitted the application to the insuring agency. Ultimately, the policies were determined to be void as a matter of law. To determine liability on these facts, the Court looks to the standard of care owed by O'Leary to the plaintiffs.
The duty of an insurance broker who undertakes to procure insurance for another is an established aspect of insurance law. See generally, Annotation, Liability of Insurance Broker or Agent to Insured for Failure to Procure Insurance, 64 A.L. R.3rd 398 (1975). It is a:
"well-settled rule that an insurance agent or broker who, with a view to compensation for his services, undertakes to procure insurance for another, and through his fault and neglect fails to do so, will be held liable for any damage resulting therefrom."
Id. at 404. It is further established that:
... an agent or broker who undertakes to procure insurance impliedly undertakes to give notice to his client in the event of his failure to procure such insurance.
Id. at 405.
Both O'Leary and the parties generally concede, and in fact argue, that the duty of the agent is one of reasonable care, skill and diligence. United Stores of America, Inc. v. Insurance Consultants, Inc., 332 F.Supp. 640, 643-44 (E.D.Mo.1971). Further, the stipulations establish that O'Leary never notified plaintiffs that they were not eligible for the flood insurance coverage. Hence, the critical determination is whether the fact that the properties were not eligible was a fact of which O'Leary should have been aware under the "reasonable care, skill and diligence" standard.
In view of the circumstances, the Court concludes that O'Leary should have been so aware. While it may seem unfair and unduly harsh to charge a layman with such knowledge on the mere fact that it was published in the Federal Register, this would clearly be appropriate under Merrill, supra. A broker, who holds himself out to the public as a professional, offers a particular expertise to the layman, and solicits the layman's trust that he is fully protected against casualties on the basis of the broker's assurances, should be held to no less stringent a standard. Hence, the Court finds that the fact that the broker had access to the information that plaintiffs were never qualified, and failed to provide *1368 that information to plaintiffs constitutes a breach of the broker's duty and renders him liable to the plaintiffs. Since plaintiffs could have recovered no more than the limits of their respective policies, even had the policies been effective, this constitutes the limits of their recovery against O'Leary.

D. Conclusion.

On the basis of the foregoing, the Court finds that defendant O'Leary is liable to plaintiffs Robert G. Bell and Gevodia Bell in the amount of Five Thousand Six Hundred Dollars ($5,600.00); and to plaintiffs Edward L. Boni and Patricia Boni in the amount of Sixteen Thousand Dollars ($16,000). The Court makes no finding with respect to the liability of any co-defendant to any other co-defendant.

ORDER
In accordance with the Memorandum of this Court filed this date and incorporated herein,
IT IS HEREBY ORDERED that defendant Federal Emergency Management Agency have judgment against plaintiffs Robert Bell and Gevodia Bell and against plaintiffs Edward L. Boni and Patricia A. Boni; and
IT IS FURTHER ORDERED that defendant Shelter Mutual Insurance Company have judgment against plaintiffs Robert G. Bell and Gevodia Bell, and against Edward L. and Patricia A. Boni; and
IT IS FURTHER ORDERED that plaintiffs Robert G. Bell and Gevodia Bell have judgment against defendant James O'Leary in the amount of Five Thousand Six Hundred Dollars ($5,600.00); and
IT IS FURTHER ORDERED that plaintiffs Edward L. Boni and Patricia A. Boni have judgment against defendant James O'Leary in the amount of Sixteen Thousand Dollars ($16,000.00).
NOTES
[1] The Court is compelled to observe that the Stipulation of Fact entered into by the parties provides the Court at best only a bare bones record upon which to enter a decision. No stipulation was provided as to the accuracy or entry into evidence of any portion of the record. Since the parties have waived a trial and submitted the matter to the Court for final determination, the Court is confined to the Stipulation for its factual findings. While the Court is reluctant to enter judgment on the basis of such a paucity of factual information, particularly with respect to such fact-oriented issues as estoppel, it recognizes the right of the parties to control the lawsuit within reasonable limits.
[2] Neither plaintiff has argued for liability of F.E.M.A. on the grounds of agency between F.E.M.A. and the issuing company (E.D.S. and Shelter).
[3] Whether Shelter is liable to Bell because O'Leary was an agent of Shelter is an issue not argued by Bell and therefore not addressed by the Court.