Roger PARSHALL, Respondent,

v.

Doyle O. BUETZER et al., Appellant.

No. WD 65059.

Missouri Court of Appeals,
Western District.

July 11, 2006.

Jimmy E. Allen, Jr., Leawood, KS, and Scott David Hofer, Kansas City, for Appellant.

Zel Martin Fischer, Rock Port, for Respondent.

RONALD R. HOLLIGER, Judge.

Doyle Buetzer and Green Hills Insurance Service, L.L.C. (hereinafter "Agent") appeal for the second time from the grant of summary judgment on liability in favor of Roger Parshall, doing business as Parshall Concrete, and a jury verdict awarding damages against Agent for the failure to secure insurance covering a concrete plant owned by Parshall. Agent does not contend that there are any contested facts that prevent summary judgment but that summary judgment was improper because of the erroneous interpretation and application of law. Agent also asserts error in the nature and amount of damages awarded after a jury trial.

Agent had placed insurance coverage with Employers' Mutual Casualty Co. ("Insurer") on numerous items of business property owned by Parshall. In March of 1998, Parshall requested Agent procure insurance on a portable concrete plant that Parshall was in the process of purchasing. It is uncontested that Agent agreed to secure the insurance coverage. More than a month later, a windstorm destroyed the concrete plant. Insurer denied the claim, explaining that Agent had never contacted Insurer regarding the intended coverage.

Parshall subsequently sued Agent for negligence in failing to procure insurance. The trial court granted Parshall summary judgment on liability and held a jury trial to assess damages. Agent appealed and we reversed the grant of summary judgment on liability for Parshall's negligence claim.[1] *Parshall v. Buetzer*, 121 S.W.3d 548, 553–54 (Mo.App. W.D.2003). On remand Parshall amended its summary judgment motion to address the deficiencies found in *Parshall* I. Once again the trial court entered partial summary judgment in Parshall's favor on liability. A jury again awarded damages to Parshall.

Agent appeals again, contending that the trial court erred (1) in granting summary judgment on the issue of liability, finding Agent was not an agent of Insurer with authority to bind the desired coverage; (2) in granting summary judgment finding Parshall bore no comparative fault; and (3) in allowing evidence of damages that would not have been covered by the contemplated insurance. We affirm.

### Facts

Buetzer's agency is not a "captive" agent for one insurer, but instead operates as an independent contractor selling policies for several insurance companies. On March 11, 1998, Parshall purchased a portable concrete plant for $40,000. On March 20, Parshall's wife contacted Buetzer to request insurance on the new plant, and Buetzer told her the insurance coverage was bound as of the moment of that conversation. Buetzer asked Parshall's wife to have Parshall call him, but did not indicate it was necessary or urgent. Buetzer indicated that he would collect further details about the equipment, but did not follow up to get any further information. Buetzer made notes to himself at his office to follow up to get the additional information, but failed to do so. When Buetzer spoke with Parshall on March 25 about unrelated matters, Buetzer did not request the additional information. When they spoke again on March 30, Buetzer again did not seek any additional information about the concrete plant. At no time prior to April 28 did Buetzer submit a policy

---

1. Agent also appealed the grant of summary judgment in favor of Insurer on Agent's claim

for a declaratory judgment seeking a finding that Insurer had in fact issued coverage.

application or addendum to the putative insurer.

On April 28, 1998, a windstorm completely destroyed the concrete plant. The collapse of the concrete plant damaged a semi-tractor and trailer also owned by Parshall. The contents of the trailer were also damaged. Additional damages included clean-up costs and lost business over the subsequent months.

On April 29, 1998, Parshall contacted Buetzer to report the damage and initiate filing a claim. Buetzer in turn contacted Insurer, who denied the claim on the grounds that it had received no notice whatsoever of the existence of the property or any intention that Insurer cover the property. Buetzer operates under a contract (the "Agreement") with Insurer. The Agreement provides that Buetzer has authority to bind Insurer to insurance policies for three days, up to certain dollar amounts (depending on the type of policy). The Agreement provides that Buetzer must notify Insurer of the intended policy within three days of binding coverage. Upon receiving timely notice, Insurer determines whether to accept or deny the intended policy. On the type of policy contemplated in this case, Buetzer's binding authority was limited to $50,000, which was adequate to cover the $40,000 purchase price of the destroyed portable concrete plant. However, Buetzer did nothing to notify Insurer of the intended policy, either within the three-day binder period or at any time in the month prior to the plant's destruction.

Parshall sued Buetzer and Green Hills Insurance Service for negligence in failing to procure insurance. Insurer is no longer a party to this litigation.[2]

## Discussion

### I.

In his first point on appeal, Buetzer argues that summary judgment on liability was improperly granted for Parshall and should have been granted for Buetzer because he, Buetzer, was an agent for Insurer, and his authority included the power to bind Insurer to the policy contemplated in this case. He argues that when he told Parshall's wife the insurance was effectively bound, he successfully and permanently bound Insurer to an oral insurance contract, and that he was therefore not negligent. Buetzer argues both that he had actual authority under his Agreement with Insurer, and that he possessed apparent authority to permanently bind coverage. Buetzer's argument in point one relies solely on an interpretation of the Agreement; he stresses on appeal and in his counter-motion for summary judgment

---

**2.** Buetzer impleaded Insurer as a third-party defendant by filing a declaratory judgment petition against insurer, seeking a declaration that Buetzer had bound coverage. This court dismissed that petition in *Parshall v. Buetzer,* 121 S.W.3d 548, 551–53 (Mo.App. W.D.2003), finding that the trial court lacked jurisdiction over a declaratory judgment action involving the same allegation (i.e., that Buetzer bound coverage) raised as a defense against Parshall in live litigation. Why Buetzer did not *join* Insurer as a party to this litigation, we will not speculate. "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, *or in the alternative,* any right to relief in respect of or arising out of the same transaction[s] or occurrence[s.]" Rule 52.05 (emphasis added). "Recommended practice is to sue both the insurer and agent in the same suit on alternate theories of liability. This is mandated where a dual agency and/or binding authority issue is present." 3 Lee R. Russ & Thomas F Segallo, COUCH ON INSURANCE 3D SECTION 46:43 (1995). We recognize, of course, that "a client complaining of the inadequacy or ineffectiveness of [an] insurance policy procured ... by an agent (or broker) is not required first to bring an action on the policy against the insurance company[.]" 12 Eric Mills Holmes, HOLMES' APPLEMAN ON INSURANCE 2D Section 82.1 (1999).

that the parties do not dispute the facts which determine whether the insurance was successfully procured. "Where, as here, the essential facts are not in question, disputes arising from the interpretation and application of a contract are reviewed *de novo* as a matter of law." *Care Ctr. of Kansas City v. Horton,* 173 S.W.3d 353, 355 (Mo.App. W.D.2005). Furthermore, we review a grant of summary judgment *de novo.* *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6).

■ A person who sells insurance is commonly called an "agent," but "agent" is a legal term of art. Used as a term of art, "[a]gency is the fiduciary relation which results from the manifestation of consent by one person [a principal] to another [an agent] that the [agent] shall act on [the principal's] behalf and subject to [the principal's] control, and consent by the [agent] so to act." RESTATEMENT (SECOND) OF AGENCY Section 1 (1958). Merely calling an insurance seller an agent does not mean the seller is an agent in the legal sense. Nor does calling the seller an agent, stand-

ing alone, indicate the scope of the agent's authority to act for the principal.

■ Buetzer cites Missouri cases finding that an insurer is bound by the acts of its agents, even though the agent failed to comply with the insurer's instructions to the agent. Buetzer correctly cites the rule that "an insurance agent, *acting within the scope of his authority,* actual or apparent, may bind an insurance company by an oral contract of insurance." *Voss v. Am. Mut. Liab. Ins. Co.,* 341 S.W.2d 270, 275 (Mo.App.1960) (emphasis added). But this begs the very question before us, namely whether Buetzer's oral promise of the insurance coverage was within the scope of his actual or apparent authority.

■ We first address Buetzer's argument that he had actual authority to bind Insurer to the intended coverage. Actual "[a]uthority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." RESTATEMENT (SECOND) OF AGENCY Section 7 (1958). Therefore, the scope of Buetzer's actual authority is derived from the express or implied manifestations to Buetzer of Insurer's consent.[3] Buetzer is not an employee or "captive" agent of Insurer,[4] but instead serves as an independent contractor selling policies for several insurers.[5] In his counter-motion for sum-

---

3. A principal's manifestations to a third party that the agent deals with give rise to apparent authority.

4. A "captive" agent is restricted to selling policies for only one insurer. *Bargfrede v. Am. Income Life Ins. Co.,* 21 S.W.3d 157, 163 n. 8 (Mo.App. W.D.2000).

5. Our research on the role of an independent contractor as an agent has turned up a potentially misleading assertion in Missouri case law, namely that "[o]ne cannot be an independent contractor and at the same time be an agent for the same purposes." *Jeff–Cole*

*Quarries, Inc. v. Bell,* 454 S.W.2d 5, 14 (Mo. 1970); *Rackers & Baclesse, Inc. v. Kinstler,* 497 S.W.2d 549, 552 (Mo.App.1973); *Crist Sod Co. v. Bruce,* 599 S.W.2d 43, 45 (Mo.App. E.D.1980). Although we presume that in those cases the court properly found that the independent contractor was not an agent, it is plain that an independent contractor *can be* an agent. RESTATEMENT (SECOND) OF AGENCY SECTIONS 2, 14N (1958). The Missouri cases stating a conflicting rule have been cited in secondary sources. *See* William R. Mureiko, Note, *The Agency Theory of the Attorney–Client Relationship: An Improper Justification for Holding Clients Responsible for their Attor-*

mary judgment and memorandum in opposition to Parshall's motion for summary judgment, Buetzer argued he was a "general agent"[6] for Insurer and that nothing in the Agreement prevents his temporary, three-day binding authority from effectively binding Insurer permanently. Buetzer's counter-motion for summary judgment relies solely on the Agreement as evidence of the scope of his actual authority, and adduces no evidence of implied authority given him by Insurer. The Agreement's limitation provisions include the $50,000 limit for the type of coverage sought here, and the three-day duration of his binding authority. We can no more disregard the time limitation than we can disregard the amount limitation; we can no more extend the time limitation from three days to 35 than we can extend the dollar limitation from $50,000 to one-half million. Buetzer did not merely omit some detail on the policy application, or orally promise coverage that varied from the written policy. Buetzer did nothing at all. There was no policy application, timely or late. Buetzer admitted in his response to Parshall's motion for summary judgment that Insurer "never issued a policy for the property."

Buetzer also argues that he is insulated by reason of his apparent authority. In determining the scope of apparent authority, "manifestations of the principal to the [third] party to the transaction are interpreted in light of what the other party knows or should know instead of what the agent knows or should know[.]" RESTATEMENT (SECOND) OF AGENCY Section 49 (1958).[7] Here, Buetzer points to no act by Insurer that would indicate *to Parshall* that Insurer gave Buetzer authority to bind the contemplated coverage. No evidence shows that Insurer did anything to clothe Buetzer with anything other than the authority conferred by the Agreement. No evidence, therefore, supports Buetzer's apparent authority argument.

Cases cited by Buetzer do not avail him. In *Voss,* the plaintiff-insured contacted the defendant-insurer directly to request insurance, and the insurer sent its agent, thereby manifesting the insurer's intent to be bound by the agent's acts. 341 S.W.2d. at 273, 275. In *Baker v. St. Paul Fire & Marine Insurance Co.,* the plaintiff-insured filled out and signed the defendant-insurer's own application form, so the form constituted evidence that the insurer conferred the requisite authority on the agent. 427 S.W.2d 281, 284 (Mo.App.1968). In *Chailland v. MFA Mutual Insurance Co.,* the plaintiff-insured visited the agent at the agent's office, which bore signs bearing the name of the defendant-insurer, and the insured paid premiums on the policy to insurer. 375 S.W.2d 78, 80 (Mo. banc

---

neys' *Procedural Errors,* 1988 Duke L.J. 733, 754 n. 44 (1988); 2A C.J.S. *Agency* Section 17 (2003). Resolution of the conflict is not necessary for this case.

**6.** The term "general agent" is ambiguous: It may mean an agent "authorized to conduct a series of transactions involving a continuity of service," RESTATEMENT (SECOND) OF AGENCY, Section 7 (1958), or it may mean an agent who acts on behalf of several principals, *Baker v. St. Paul Fire & Marine Ins. Co.,* 427 S.W.2d 281, 284 (Mo.App.1968). The latter definition carries no specific implications for the authority of the agent with respect to each prin-

cipal. Buetzer apparently intends the former meaning, while Parshall has used the term to intend the latter. Neither presumably intends to concede the other's preferred definition.

**7.** If it seems unusual that the agent is attempting to use the doctrine of apparent authority to defensively avoid liability to the third party who is in fact the agent's principal, we have found no cases demonstrating such use. Apparent authority is, of course, used by a third party to contractually bind the agent's principal to the third party. Although the use here by Buetzer seems illogical, we need not express a holding thereon.

1964). The insurer also defended the insured in the prior civil suit that led to the garnishment action before the court. *Id.* at 82. In *Mills v. Cameron Mutual Insurance Co.*, the insurer issued a policy on the covered property and accepted premiums. 674 S.W.2d 244, 247–48 (Mo.App. S.D.1984). In summary, every case cited by Buetzer involves clear manifestations by the insurer to the third party placing the agent's acts within the scope of apparent authority. Here, the sole evidence of Insurer's intent is the Agreement, which says Buetzer's binding authority was limited to three days.

■ Buetzer stresses that his binding authority cannot be limited by "secret" instructions in the Agreement, namely the three-day limit. The cases cited by Buetzer did not require resolution of whether instructions to the agent were "secret," and those discussions of "secret" instructions are therefore *dicta*. *Graue v. Mo. Prop. Ins. Placement Facility*, 847 S.W.2d 779, 784 (Mo. banc 1993); *Dudley v. Dumont*, 526 S.W.2d 839, 846 (Mo.App.1975). Our research reveals that a principal may be bound by an agent's acts despite a "secret" limitation where the principal has clothed the agent with apparent authority. *Wynn v. McMahon Ford Co.*, 414 S.W.2d 330, 337 (Mo.App.1967). Likewise, "secret" limitations may mean those the principal intends "not to be revealed." RESTATEMENT (SECOND) OF AGENCY, Section 160 (1958). Here, as discussed above, no evidence shows Insurer acted to clothe Buetzer with apparent authority. And there is no evidence that Insurer intended the terms of the Agreement to remain secret or private. Buetzer's argument about secret limitations is therefore misplaced.

In affirming summary judgment on whether Buetzer failed to procure the insurance he orally promised to Parshall, we stress that our conclusion about Buetzer's authority is based on (1) our interpretation of the limits in the Agreement, because that is the *only* evidence of authority in this case; and (2) Buetzer's failure to do anything whatsoever to effectuate the desired coverage. Point denied.

## II.

■ In his second point on appeal, Buetzer claims the trial court erred in granting summary judgment against Buetzer on his affirmative defense of comparative fault. Buetzer claims Parshall contributed to his own loss by failing to provide Buetzer the additional information Buetzer sought. "Before a jury can assess the comparative fault of parties in a negligence action, all the elements of a negligence action must be established." *Stroot v. Taco Bell Corp.*, 972 S.W.2d 447, 449 (Mo.App. E.D.1998). Assuming *arguendo* that Parshall breached some duty to provide information, we note that Buetzer's opposition to summary judgment fails to allege that this was a cause of the failure to procure the insurance. Namely, nowhere does Buetzer allege that, had Parshall provided the information, Buetzer would have contacted Insurer. And Insurer testified in deposition that the lack of information would not have prevented Insurer from covering the concrete plant, had Buetzer contacted Insurer with the limited information he had. Buetzer never denied this fact. Causation is a necessary element of negligence, *Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 18 (Mo. App. E.D.2005), and Buetzer failed to plead or prove it. Summary judgment on the issue of liability was appropriate. Point denied.

## III.

In his third point, Buetzer says the trial court erred (1) by not limiting Parshall to damages that would have been covered

under the contemplated insurance policy, and (2) by permitting evidence on various elements of consequential damages.

■■■ For his contention that damages should be limited by the terms of the contemplated policy, Buetzer cites *United Stores of America, Inc. v. Insurance Consultants, Inc.,* 332 F.Supp. 640, 644 (E.D.Mo.1971), which says "the broker is liable to the same extent as the insurer would have been liable had the insurance been properly effected [.]" But *United Stores* found no negligence on the agent's part, so the quoted language, as it may apply to limits on damages, is *dicta. Id.* The majority of Missouri cases discussing the recoverable damages say the agent is liable for "*any* damage" resulting from the agent's negligence. *Gauert v. Chris–Leef Gen'l Agency, Inc.,* 123 S.W.3d 270, 272 (Mo.App. W.D.2003); *Kap–Pel Fabrics, Inc. v. R.B. Jones & Sons, Inc.,* 402 S.W.2d 49, 53 (Mo.App.1966); *Zeff Distrib. Co. v. Aetna Cas. & Sur. Co.,* 389 S.W.2d 789, 795 (Mo.1965). We think this is the proper rule in light of the cause of action here sounding in tort. We express no opinion on whether a similar action in contract would be limited by the terms of the contemplated insurance policy.

Buetzer also challenges various elements of consequential damages. He challenges allowing "loss of use" damages; but in his brief, where he itemizes the elements of damages, nowhere does he list a damages element called "loss of use." We will not speculate about which damages Buetzer challenges with this argument. He also argues that the $18,000 interest paid on the bank loan for the destroyed plant constitutes improper "prejudgment interest." He cites no authority, and we find none, explaining why interest actually paid is anything other than consequential damage.

■■■ Finally, Buetzer argues that lost profits damages were inappropriate, and that insufficient evidence supported the jury's award of lost profits. We have already addressed the issue of what damages are allowed, *supra.* Regarding sufficiency of the evidence, "[f]or an award of lost profits damages, a party must produce evidence that provides an adequate basis for estimating the lost profits with reasonable certainty." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.,* 155 S.W.3d 50, 54 (Mo. banc 2005). "The claimant must establish the fact of damages with reasonable certainty, but it is not always possible to establish the amount of damages with the same degree of certainty." *Id.* at 55. "Where damages are in the nature of lost profits, all that can be required is to produce all relevant facts tending to show the extent of damages[.]" *Smith Moore & Co. J.L. v. Mason Realty & Inv., Inc.,* 817 S.W.2d 530, 534 (Mo.App. E.D.1991). A business owner's "testimonial evidence [is] sufficient to provide the trier of fact with a rational basis for estimating damages to the plaintiff, including lost profits." *Id.*

■■■ The lost profits evidence was restricted by the trial court to a single lost contract for a single job in the one year following the plant's destruction. The general contractor on that lost contract testified that he likely would have hired Parshall to supply 20,000 cubic yards of concrete at $70 per yard, if Parshall had the concrete plant to do the job. Another general contractor corroborated the reasonableness and competitiveness of that rate, agreeing that Parshall would likely have won such a bid. Parshall testified that, based on his many years' experience in the concrete business, he would have earned fifteen per cent profit on that job, for a net profit of $210,000. We find this evidence established the fact of lost profits

with reasonable certainty, and was sufficient to support the amount.

The judgment is affirmed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.