Daniel F. LEVEY and The Dan Levey Company, Inc., a corporation, Respondents-Plaintiffs,

v.

ROOSEVELT FEDERAL SAVINGS AND LOAN ASSOCIATION OF ST. LOUIS et al., Appellant-Defendant.

No. 34857.

Missouri Court of Appeals, St. Louis District, Division Two.

Dec. 27, 1973.

Millar, Schaefer, Ebling & Wallace, Samuel C. Ebling, John B. Lewis, St. Louis, for appellant-defendant.

Gray, Friedman & Ritter, C. Marshall Friedman, St. Louis, for respondents-plaintiffs.

McMILLIAN, Judge.

This is an appeal by defendant Roosevelt Federal Savings and Loan Association, hereinafter referred to as Roosevelt, from a judgment entered by the Circuit Court of the City of St. Louis, Missouri, for $25,200.00 in favor of planitiffs, Daniel F. Levey and The Dan Levey Company, Inc., a corporation, hereinafter referred to as Dan Levey and Levey Company respectively. At the close of plaintiffs' case, the Court sustained a motion for a directed verdict by a second defendant, New York Life Insurance Company, a corporation, hereinafter referred to as New York Life.

Roosevelt claims that the trial court erred (1) in finding that Levey Company had the capacity to sue, (2) in permitting a joinder of Roosevelt and New York Life as party defendants, (3) in failing to sustain Roosevelt's motion for a dismissal at the close of plaintiffs' opening statement, (4) in the giving of instruction, and (5) in permitting an excessive jury verdict to stand. We affirm.

Plaintiffs' cause of action arose out of an involved financial arrangement incidental to the proposed construction of a 141 unit town house development. The town house development was to be constructed on five acres of unimproved real estate located generally at the intersection of Union Road and Reavis Barracks Road in South St. Louis County.

On March 3, 1966, Levey, individually, entered into a contract with New York Life to borrow One Million Four Hundred Thousand Dollars ($1,400,000.00) as a "permanent loan," said loan to be secured by the proposed town house development. New York Life was paid a Fourteen Thousand Dollar ($14,000.00) security deposit to be kept by it as liquidated damages in the event New York Life did not acquire the permanent loan. New York Life's commitment required that the borrower obtain construction financing from an interim lender and that New York Life, the interim lender, and borrower Levey, enter into a "buy-sell" agreement. The buy and sell agreement required the interim lender to agree to sell its construction loan deed of trust and note to New York Life at the completion of the town house development.

Subsequently on March 22, 1966, Levey Company entered into a contract with Roosevelt to borrow One Million Four Hundred Thousand Dollars ($1,400,000.00) for an interim "construction loan." This construction loan was also to be secured by the proposed town house development. Although all parties were required to sign the buy-sell agreement, Roosevelt refused to sign.

Earlier in November, 1965, Appliance Rental, Inc., entered into and paid Two Thousand Dollars ($2,000.00) for an earnest money contract for the purchase of the aforesaid unimproved five acres. Dan Levey was the president of Appliance Rentals, Inc.

The "construction loan" is money borrowed to pay for the construction of proposed improvements to be built upon the parcel of land and is disbursed either in a lump sum or in accordance with the billing of the construction contractor to the developer. A construction loan normally is for a term consistent with the contemplated length of time required for construction and may range from twelve to twenty-four months. On the other hand, a "permanent loan" is a long term loan which is usually amortized in equal monthly payments over a period of twenty to thirty years. The permanent loan becomes operative after the project is complete and the construction loan is at an end.

To effect an orderly transition from the "construction loan" to the "permanent loan" where the construction lender is not the permanent lender, a "buy-sell" agreement must be employed. A "buy-sell" agreement is a contract whereby the construction lender agrees to sell its note and deed of trust to the permanent lender for a stated amount of money which is presumably the principal amount of the note, together with interest and cost as specified in the contract.

Neither the contract to purchase the real estate nor either of the two contracts to borrow money was ever closed. According to the plaintiffs, the reason none of the contracts was closed was that because Roosevelt failed to enter into a buy-sell agreement with New York Life. On the other hand, Roosevelt blames Levey Company for its failure to enter into a "construction disbursing agreement" pursuant to the terms of the contract to borrow money. By consensus of all the parties the action was presented to the trial court jury as one in contract.

On January 1, 1968, Levey Company's charter was forfeited by the Secretary of State. But on May 10, 1971, the Secretary of State rescinded the forfeiture and issued a Certificate of Rescission for Forfeiture pursuant to § 351.535, V.A.M.S. (1969) which provides:

"No corporation shall maintain an action in any court of this state . . . for the enforcement of à contract, made . . . after the forfeiture of its certificate . . . unless it shall have first been reinstated, or the forfeiture entered against it rescinded. . . ." (Emphasis added.)

Following the rescission, Levey Company joined with Dan Levey as party plaintiff.

Roosevelt contends that the affidavit filed by Levey Company to obtain the Certificate of Rescission was fraudulent; therefore, Levey Company had no capacity to maintain an action. In support of its position Roosevelt refers us to § 351.535, RSMo V.A.M.S. (1969); Clark Estate Co. v. Gentry, 362 Mo. 80, 240 S.W.2d 124 (1951); and Schneider v. Best Truck Lines, Inc., 472 S.W.2d 655 (Mo.App. 1971).

■ No one quarrels with the proposition that a corporation may not maintain an action in any court of this state while it is either under suspension or after the forfeiture of its certificate of authority.

Both *Clark*, supra, and *Schneider*, supra, are distinguishable. The *Clark* case involved an action for fraud and misrepresentation. The charter of the corporation plaintiff had been in a state of forfeiture for sixteen years at the time it was joined as a party plaintiff. The court held that the subsequent rescission of forfeiture by the Secretary of State was not retroactive; consequently, the rescission did not toll the statute of limitations and the action was barred by the five year statute. The *Schneider* case involved an action against a corporation upon a promissory note and account. The charter of the defendant corporation was in forfeiture at the time of the transaction giving rise to the lawsuit and at the time of suit. In its answer the defendant corporation admitted its corporate existence and its capacity to be sued. The court held that because of its admission the defendant corporation was estopped from denying its corporate status on the occasions of its dealing with plaintiff.

In the instant case it is undisputed that the Levey Company's charter was in good standing at the time of all occurrences and transactions out of which this lawsuit arose. Moreover, it is undisputed that Levey Company was not made a party plaintiff until after the forfeiture had been rescinded and a Certificate of Rescission for Forfeiture issued.

■ Even if we were to assume that the Certificate of Rescission for Forfeiture was fraudulent, the question remains as to whether or not its validity may be attacked by Roosevelt in a collateral proceeding. In Boatmen's Bank v. Gillespie et al., 209 Mo. 217, 108 S.W. 74, 86 (1907), our Supreme Court stated:

" . . . Moreover, whatever may be the rule in other jurisdictions, we understand the law in this state to be that a *certificate of incorporation issued* by the *Secretary of State* is a *final determination* of the corporation's right to do business as such, and that thereafter *the state only*, by *a direct proceeding*, can challenge its corporate existence or its right to do business as a corporation, even though fraud should be practiced upon the Secretary of State in obtaining the certificate. Nor, should the corporation or its incorporators fail to comply with the conditions or duties subsequent to the granting of the certificate, would that invalidate the incorporation . . ." (Emphasis added.)

In New Liberty Medical & Hosp. Corp. v. E. F. Hutton & Co., et al., 474 S.W.2d 1, 4 [1] (Mo. banc 1971), Chief Justice Finch, speaking for a unanimous court, stated:

" . . . Appellants have no standing to challenge the legality of plaintiff's legal existence in this proceeding. 'The general rule is that on grounds of sovereignty and public policy the legal existence of a corporation cannot be attacked collaterally by private suitors, but only in a direct proceeding instituted by the State.' Evangelical Lutheran Synod of Missouri, Ohio and Other States v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, 141."

See also Laird v. Pan-American Lumber Co., 237 S.W. 1047, 1050 (Mo.App.1922) (Rescission for Forfeiture granted to de-

fendant corporation); also First Nat. Bank v. Rockefeller, 195 Mo. 15, 93 S.W. 761, 767 (1906). Accordingly, we hold that Levey Company's corporate capacity to sue was a collateral matter which Roosevelt, as a private suitor, may not raise in the instant proceedings.

Plaintiffs' second amended petition was in five Counts: Count I against Roosevelt and New York Life jointly; Count II and Count III against Roosevelt individually; Counts IV and V against New York Life individually. With the exception of Count I (fraud) it is difficult to tell what plaintiffs' theory of recovery was because of the comingling of common counts, damage to reputation, etc. But in any event, by agreement the case was tried as a breach of contract against both defendants, and submitted as such without any reference to Counts in the instruction as to the remaining defendant Roosevelt. Still the question remains as to whether or not there is a proper joinder of party plaintiffs, party defendants, and joinder of claims.

Rule 52.05(a), V.A.M.R.,[1] allows joinder, as plaintiffs or defendants respectively, of all parties by or against whom (1) is asserted any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions and occurrences, (2) if any question of law or fact to all of them will arise in the action. It is expressly provided that a plaintiff or defendant "need not be interested in obtaining or defending against all the relief demanded" and that the judgment for or against each party shall be given "according to their respective rights" or liabilities. Such a rule would seem to lay down broad guides for ascertaining the trial convenience of joinder which are necessarily addressed to the sound discretion of the trial court. Nonetheless, where there is a multiplicity both of causes of action and parties, Rule 55.07 (Joinder of Claims) also must be satisfied. Rule 55.07 provides that plaintiff in his petition and defendant in his answer, respectively, may join either as independent or as alternate claims as many claims, either legal or equitable, or both, as each may have against an opposing party. But if there are multiple parties the requirements of Rules 52.04 (necessary parties), 52.05 (permissive joinder), and 52.07 (interpleader) must be satisfied. Before attempting to apply any of the rules heretofore referred to, we feel that a review of the evidence would be helpful.

The evidence showed that after New York Life, upon receipt of payment of a security deposit by Dan Levey, issued its permanent loan commitment, a copy of which was furnished to Roosevelt. The commitment was recited not only that the borrower (Dan Levey) was to obtain a construction loan from an interim lender, but also that New York Life, the interim lender (Roosevelt), and the borrower were to enter into a "buy-sell" agreement. Furthermore, after Roosevelt approved the interim construction loan, it issued a commitment for that loan which not only acknowledged receipt of a copy of New York Life's commitment, but also agreed that Roosevelt would sell its construction loan deed of trust and note to New York Life.

While New York Life's commitment listed Dan Levey as the mortgagor, it also provided that he (Dan Levey) would have no personal liability and that the title to the property would vest in one of his corporations. Roosevelt was aware of this provision. Furthermore, even though the Roosevelt commitment was addressed to "Mr. Daniel Levey, president, The Dan Levey Company" its commitment required the note to be personally signed by Dan Levey and his wife. The "buy-sell" agreement was required to be personally signed by Dan Levey; the closing statement prepared by Roosevelt listed Levey Company and Dan Levey and wife as the borrowers; the title binder was subject to a warranty deed from the seller to Mr. & Mrs. Dan

---

1. V.A.M.R., unless otherwise specified, refers to Rules of Court and Amendments, October 1972.

Levey. Likewise, the evidence established that Dan Levey was the sole stockholder of the corporation, and that he personally paid the Roosevelt fee.

■ Taking up first the joinder of party plaintiffs and party defendants, plaintiffs are asserting individual contract claims arising out of the same transaction, or at least a series of transactions. To be sure, there could be separate questions of damages and there may be defenses available against some and not others, but this is not fatal. The rule does not require that all questions presented by each plaintiff be common; it is enough if there is any common question, and the wrongful quality of either defendant's act is a question common to both claims. No doubt the common question must be one of substantial litigious importance, and this again emphasizes the role of the trial court's discretion. In our case it is obvious that for the town house development project to succeed it depended wholly upon the combined actions of both Roosevelt and New York Life. By an exchange of information this fact was known to both. Common questions of fact were, did Roosevelt agree to make the interim construction loan; did Roosevelt agree to enter into a buy and sell agreement with plaintiffs and New York Life, assuring New York Life on the right of purchase; did Roosevelt fail to execute the buy and sell agreement; and did Roosevelt's failure to enter into the buy-sell agreement preclude plaintiffs from performing their obligation under the New York Life commitment.

■ Yet the fact of common questions of fact is not enough for joinder. In addition to this the rights or obligations of the parties joined must arise "out of the same transaction . . . or series of transactions. . . ." So the question then is what acts or events will give unity as a transaction? What will endow separate transactions with the quality of belonging to a series? The test suggested by these terms are vague and unclear. Ordinarily if two defendants act entirely independently of each other, the conduct of each is a separate transaction and the sum of their acts or activities does not constitute a series. So, too, that a connected story of the several transactions may be told is not alone sufficient. They must be connected with the subject matter of the action. Pressley v. Great A. and P. Tea Co., 226 N.C. 518, 39 S.E.2d 382 (1946). But it is not necessary that there be absolute identity of all events in order that it may be said that the rights asserted arise out of the same transaction or series of transactions. Messelt v. Security Storage Co., 11 F.R.D. 342, 344 (D.Del.1951) (cited with approval in State ex rel. Campbell v. James, 263 S.W.2d 402, 407 (Mo. banc 1953)). Cement or unity justifying joinder may be found from (1) a common scheme or design, or (2) the fact that all acts or conduct are more or less consciously directed toward or connected with some common core, common purpose, or common event.

Thus in United States v. Anchor Line, Ltd., 8 F.R.Serv.2d 20a.2, Case 3 (S.D.N.Y.1964), the court found joinder of several defendants, parties to several contracts, proper under Rule 20, Fed.R.Civ.P., which is similar in all respects with Missouri Rule 52.04. In that case, the government alleged that defendants entered into several anti-competitive agreements without filing notice with the Federal Maritime Board, as required by federal statute. Defendants sought severance of the claims against them, but the court held that the activity of defendants in entering into several contracts to restrict competition among themselves amounted to a "series of transactions or occurrences" within the meaning of Rule 20, Fed.R.Civ.P. Similarly, in Benson Manufacturing Co. v. Bell Telephone Co. of Pennsylvania, 8 F.R.Serv.2d 20a.2, Case 1 (E.D.Pa.1964), the court held permissive joinder proper in a subcontracting case. Where the Bell Company contracted with an architectural firm for the construction of a building, and where Bell then subcontracted with a construction firm, which firm subcontracted again with

suppliers, and where the architectural firm rejected certain items furnished by the suppliers, the court found that permissive joinder in a suit by a supplier of all other parties was proper since the "same transaction" and "common question" requirements under Rule 20 were met.

An even closer analogy to the instant case is found in Commonwealth Trust Co. v. Smith, 266 U.S. 152, 45 S.Ct. 26, 69 L. Ed. 219 (1924), a water rights case where plaintiff was trustee in a deed of trust given by a developer of a desert land settlement in Idaho. The deed was held as collateral on the developer's rights under water contracts with all settlers in the settlement. The plaintiff asserted, under federal law, a lien against contracts held by two of the settlers for non-payment of installments on the purchase price. The court held, however, that the controversy reached and affected all contracts in the settlement, and that *where contracts, while several in form, are interdependent in substance and operation,* joinder was necessary.

In the instant case, both Roosevelt and New York Life knew that the common purpose was to finance the town house project; and that to accomplish this purpose there had to be a permanent lender, a construction lender, a buy-sell agreement executed by the two lenders and the borrowers, and a construction escrow disbursing agreement. The failure to acquire or negotiate any one of the four agreements would cause a failure of the whole project. Both commitments of each defendant recognizes this dilemma. In fact, these types of financing arrangements are common with real estate development. A construction loan depends on permanent, or "takeout" financing for payment, and the permanent loan depends on the construction loan for initial financing. The contracts are interdependent in substance and opera-

tion. Even absent the commitment, Roosevelt could be charged with constructive knowledge of this fact of real estate financing.

■ We find no merit to Roosevelt's claim that the joinder of party plaintiffs and defendant was improper because it contracted with Levey Company, and New York Life contracted with Dan Levey, individually. The evidence shows that Roosevelt dealt with Dan Levey as an individual, sought and obtained his personal liability, accepted its fee from him personally, and that Roosevelt knew that Dan Levey was the sole stockholder in the Levey Company. Therefore, we hold the provision of Rules 52.05(a) and 55.07 were complied with, and that the trial court did not abuse its discretion in permitting a joinder of party plaintiffs, party defendants, and a joinder of claims.

■ Roosevelt claims error on the part of the court because of the court's failure to sustain its motion to dismiss at the close of plaintiffs' opening statement, and to sustain its motion to dismiss at the close of plaintiffs' evidence. Taking up the second complaint first, we find this point against Roosevelt. Our review of the record shows that after the court overruled Roosevelt's motion to dismiss at the close of plaintiffs' case, Roosevelt put on its evidence; therefore, waiving any complaint of error that the trial court may have committed in that respect and the matter is not subject to review. Garvis v. K Mart Discount Store, 461 S.W.2d 317, 320[1] (Mo.App.1970). Plaintiff's opening statement fairly considered set forth fully its theory of the case, and the court did not commit error by overruling Roosevelt's request for a dismissal. Therefore, this point is ruled against Roosevelt.

■ Roosevelt makes three complaints about Instruction No. 3:[1] (1) that

1. Instruction No. 3.
"Your verdict must be for Plaintiffs if you believe:
"First, Defendant agreed to make a construction loan to Plaintiffs in the sum of one

million four hundred thousand ($1,400,000) dollars, and
"Second, under the terms of Defendant's construction loan commitment Defendant agreed to enter into a buy and sell agree-

it set forth the amount of the construction loan; (2) that it required a finding that Roosevelt agreed to make its construction loan to both plaintiffs; and (3) that the 5th and 6th paragraphs were repetitious.

Instruction No. Three is a modification MAI 26.02. Granted the amount of the commitment was not in issue, but the record was replete with statements as to the sum. And Roosevelt has failed to show how the mere statement of the amount was prejudicial. Secondly, we hold that Roosevelt's claim that the instruction required a finding that Roosevelt agreed to make its construcion loan to both plaintiffs to be without merit. This claim is founded upon Roosevelt's contention that it had no relationship with Dan Levey, individually. Our holding on the claims of misjoinder of party plaintiffs, party defendants, and joinder of claims disposed of this contention, and a finding in that regard was essential to both plaintiffs' theory of recovery. Lastly, Roosevelt's complaint that the paragraphs 5 and 6 are repetitious ignores the fact that both findings were necessary to plaintiffs' theory of recovery. If error, the error is not prejudicial. Therefore, we find all issues of error pertaining to Instruction No. 3 against Roosevelt.

■ In the trial court Roosevelt complained that Instruction No. 6 was erroneous because it was a damage instruction

to be utilized in tort actions and not for breach of contract cases. On appeal Roosevelt now urges the instruction to be erroneous because it contained the phrase "occurrence mentioned in evidence." Having failed to present its present contention to the trial court, and having failed to include it in its motion for a new trial, we hold that nothing has been preserved for review. Chambers v. Kansas City, 446 S.W. 2d 833, 840[8, 9] (Mo.1969); Bower v. Hog Builders, Inc., 461 S.W.2d 784, 797[4] (Mo.1970); Rules 79.03 and 83.13(a), V. A.M.R.

Instruction No. 2 given by the court on its own motion was a clarifying instruction. In our opinion, nothing contained therein could have confused, misled, or prejudiced Roosevelt before a reasonably intelligent jury. Perceiving no error we rule this assignment against Roosevelt.

■ Finally, we hold that Roosevelt's assignment of error that the verdict of the jury was excessive by reason of the prejudice created against Roosevelt by reason of cumulative errors of the trial court in ruling on matters of law and evidence is so general as to preserve nothing for review.

The judgment is affirmed.

SMITH, P. J., and CLEMENS, J., concur.

ment with Plaintiffs and New York Life Insurance Company assuring New York Life Insurance Company, of the right to purchase the loan documents, and
"Third, Plaintiffs were ready, willing and able to perform under the terms of the Defendant's construction loan commitment, and
"Fourth, Defendant refused to enter into the buy and sell agreement, and
"Fifth, because of such refusal of Defendant to enter into a buy and sell agreement

Defendant's contractual obligations were not performed, and
"Sixth, because of Defendant's refusal to enter into the buy and sell agreement Plaintiffs were unable to perform their obligations under the New York Life Insurance Company mortgage loan commitment and the Defendant's construction loan commitment, and
"Seventh, Plaintiffs were thereby damaged."