**ALUMINUM PRODUCTS ENTERPRISES, INC.,**
Plaintiff–Appellant–Respondent,

v.

**FUHRMANN TOOLING AND MANUFACTURING CO.,**
Defendant–Appellant,

and

**Charles Werntz, Defendant–Respondent.**

Nos. 53175, 53176.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 2, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 7, 1988.

Application to Transfer Denied
Oct. 18, 1988.

Michael A. Turken, St. Charles, for appellant.

J. Martin Hadican, Clayton, for respondent.

PUDLOWSKI, Judge.

Plaintiff, Aluminum Products Enterprise, Inc. [hereinafter Aluminum Products], brought an action for breach of contract and resulting damages against Charles Werntz and Fuhrmann Tooling & Mfg. Co. [hereinafter Fuhrmann]. Plaintiff contended that the defendants did not design, build and furnish all materials, tooling and labor necessary to complete certain machinery and prepare it for operation as agreed upon in their contracts. Defendants counterclaimed maintaining that there had been an agreement made at the plaintiff's request to alter the machine to allow the processing of a different type of material. The jury returned verdicts as follows: (1) On plain-

tiff's claim against defendant Werntz, the jury returned a verdict in favor of the defendant; (2) on plaintiff's claim against defendant Fuhrmann, the jury found in favor of the plaintiff and assessed the damages at $15,181; (3) on defendant Fuhrmann's counterclaim against plaintiff, the jury found for the plaintiff; and (4) on the claim of defendant Werntz, the jury found for Werntz and assessed damages of $2,050 against the plaintiff. We affirm.

*Defendant Fuhrmann's Appeal*

Defendant Fuhrmann raises three issues in this appeal. The first contends that the trial court erred in allowing unsupported or uncorroborated testimony of damages by Don Stanfill, president and sole shareholder of plaintiff corporation, who was an interested witness. Stanfill testified that the replacement value of the machinery for which he contracted was $58,700 and that the original machine had no value to him. He also testified that the scrap value of the unusable product produced by the machine during predelivery testing procedures was $4,975. In addition, Stanfill testified as to the cost of purchasing the finished product from suppliers in contrast to what the cost would have been to produce the same product had the machinery been operable. Stanfill's testimony was based in part on invoices and other business records. Although he referred to them during his testimony, the material was never offered as evidence.

In Missouri, "damages need not be established with absolute certainty, but reasonable certainty is still required as to both existence and amount and the evidence must not leave the matter to speculation." *Haggard v. Mid–States Metal Lines, Inc.,* 591 S.W.2d 71, 77 (Mo.App. 1979). "[W]here the fact of damage caused by a defendant's wrongdoing is clear, 'it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the jury, subject to the usual supervisory power of the court.'" *Ohlendorf v. Feinstein,* 670 S.W.2d 930, 933 (Mo.App. 1984). Nevertheless, Fuhrmann insists

that without the substantiating evidence of receipts and invoices, the jury could only have assessed the damages by reason of conjecture and speculation.

■■■ Stanfill's testimony as to the damages sustained by Aluminum Products was based on his personal knowledge of the business operations. Upon objection that a proper foundation had not been laid and that the best evidence would be the actual records, Stanfill retrieved the corporate records from somewhere in the courtroom. He referred to those records in answering some of the questions which followed. Nevertheless, the fact that a witness refers to records that contain all or part of the same information that he testifies to based on his personal knowledge does not render his testimonial evidence incompetent and an objection based on the best evidence rule is not well taken. *Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671, 682 (Mo.App.1985); *Central & Southern Truck Lines v. Westfall GMC Truck, Inc.*, 317 S.W.2d 841, 852–53 (Mo.App.1958). Plaintiff was not attempting to prove the contents of the records, books and invoices by oral evidence. Stanfill's testimony was that he had computed the damages based on his personal knowledge and experience; only after an objection did he refer to the invoices upon which his knowledge was partially based. The best evidence rule does not apply to exclude evidence based on personal knowledge even if the documents would have provided some of the same information. *Id.* The testimonial evidence was sufficient to provide the trier of fact with a rational basis for estimating damages to the plaintiff, including lost profits.

Furthermore, Fuhrmann contends that Stanfill's self-serving testimony supported the speculative nature of the damages; however, the weight to be accorded to the testimony of an interested witness is a matter to be determined by the jury.

Defendant Fuhrmann's second point maintains that the trial court erred in fail-. ing to grant the jury's request to view *all* the exhibits during its deliberations. The parties indicate in their briefs that the trial court sent to the jury Exhibits L through Z but refused to send Exhibits AA through TT.

"Disposition of a request from the jury during deliberations for exhibits used at trial and admitted in evidence rests within the sound discretion of the trial court." *Gambrell v. Kansas City Chief Football Club*, 621 S.W.2d 382, 386 (Mo.App.1981). As a preliminary matter, an appellant has the burden of showing that the documents were properly admitted into evidence. The exhibits at issue were offered *and admitted* at the conclusion of the trial with one exception which is not relevant to this appeal.

The only reference to Exhibits AA through TT during the trial came during the testimony of Charles Werntz.

Q (By Mr. Hadican) Charles, earlier this morning you had a number of drawings arranged from L down to Z. In addition to those drawings there are some more that are marked as Defendants' Exhibits A through AA through TT and there are also on the easel here, without going through each one of these, you have looked at these before today, have you not?

A Yes.

Q And are you the author of these particular exhibits?

A Yes.

Q And these particular exhibits, are they also relative to the rollers for the paneling and the roll machine?

A Yes.

Fuhrmann argues that L through Z exemplified Charles Werntz' work on the project while AA through TT related to the contribution of Fuhrmann. The only evidence on the record, however, refutes this contention because Werntz testified that the exhibits were drawings that he authored.

■■■ It is true that "[o]nce the court has received an item in evidence as an exhibit, that evidence should be made available to the jury on an equal basis with all other evidence in the case." *Gambrell*, 621 S.W.2d at 386. The trial court may have

abused its discretion in not sending all the exhibits to the jury as requested; however, the record is not sufficient for us to make that determination. Moreover, assuming the trial court erred there is no proof of prejudice to Fuhrmann. The exhibits were never referred to during Fuhrmann's testimony. The only testimony which relates to them was that of the codefendant, who referred to the exhibits as being *his* work. This point is denied.

■ Fuhrmann's final assertion is that the trial court erred in giving Instruction No. 7 to the jury because it was not supported by the evidence adduced at trial. The instruction read as follows:

### INSTRUCTION NO. 7

Your verdict must be for Plaintiff if you believe:

First, either:

Defendant, Fuhrmann Tooling & Mfg. Co., did not design and build, in a first class workmanlike manner, according to standard practices, one double wide v-pan machine, or

Defendant, Fuhrmann Tooling & Mfg. Co., did not design and build, in a first class workman like (sic) manner, according to standard practices, the outboard form roll dies to form Plaintiff's trim piece, or

Defendant, Fuhrmann Tooling & Mfg. Co., did not deliver to Plaintiff the completed machine, approximately ninety (90) days from receipt of the purchase order and deposit, and

Second, because of such failure, Defendant's contract obligations were not performed, and

Third, Plaintiff was thereby damaged.

We find plaintiff's verdict directing instruction is supported by substantial evidence. When considered in the light most favorable to the plaintiff, the evidence demonstrates that the parties entered into a contract on December 20, 1977. The contract, which was received in evidence at the trial, contains language remarkably similar to the instruction in question.[1] The same language is found in plaintiff's petition.

■ Stanfill testified that he authorized Fuhrmann to begin work by issuing a purchase order during the last week of December. On January 6, 1978, Stanfill paid Fuhrmann $5,000. An additional $1,000 was paid in February. The amount of the required deposit was $6,000. The testimony clearly indicated that the machine was functioning from some time in May; however, it was still not fully operational in November, 1978. The part that was to shape the trim sections was never completed. Fuhrmann argues that because plaintiff cooperated with attempts to remedy the problems with the machine after the delivery date, there was not sufficient evidence that the machine was to be ready ninety days from the start of the agreement. The part that Aluminum Products was patient with the manufacturing delays does not relieve Fuhrmann of its contractual obligations. The contract sets an approximate delivery date which Fuhrmann never came close to achieving. We find that the instruction is supported by substantial evidence.

### *Plaintiff Aluminum Product's Appeal*

Aluminum Products appeals from the $2,050 verdict rendered in favor of defendant Werntz. Plaintiff raises four points on appeal. First, plaintiff alleges trial court error in overruling a motion in limine to exclude testimony by the defendants regarding any negotiations which occurred prior to the agreements underlying this litigation. Plaintiff maintains that overruling the motion resulted in improper parol evidence being admitted.

The November 10, 1977 contract between Aluminum Products and Werntz refers to a

---

1. The contract reads as follows:
    We propose hereby to Design and Build in a first class Workmanlike Manner According to Standard Practices, One (1) only Double Wide V–Pan Rolling Machine with ten (10) Stands to include outboard Form Roll Dies to Form Trim Piece for your [Aluminum Products] Under Pinning.... Estimated Delivery Date to be approx. 90 days from time we [Fuhrmann Tooling] receive Purchase Order and Deposit....

meeting on November 3, 1977, and drawings dated October 31, 1977, and November 8, 1977. It calls for Werntz to design dies to form "Aluminum Products Enterprise" panel and trim section. Werntz contends that the contract is full, complete and unambiguous on its face and requires only the admission of the drawings referred to in the contract.

The court denied the motion in limine because it found ambiguities in the contracts with regard to the meaning to be attached to certain undefined terms. In determining whether a contract term is ambiguous, the court should consider all relevant evidence, other than the oral statements by the parties of what they intended the contract to mean. *Foley Co. v. Walnut Assoc.*, 597 S.W.2d 685, 688 (Mo.App.1980). Nowhere in the contract is "Aluminum Products Enterprise" panel and trim section defined except that the products are to conform to "dimensions and tolerances" shown on the dated drawings. The motion in limine was properly denied.

In addition, the evidence was properly admitted over the plaintiff's objection. Parol evidence may not vary or contradict the terms of an unambiguous and complete written document, absent fraud, common mistake or erroneous omission; it may not be used to create ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that expressed in the written documents. *State Bank of Fisk v. Omega Electronics*, 634 S.W.2d 234, 237 (Mo.App.1982). If, however, a contract contains an ambiguity, parol evidence is admissible for the purpose of resolving the ambiguity. *Modine Mfg. Co. v. Carlock*, 510 S.W.2d 462, 467 (Mo.1974). Evidence of agreements or negotiations prior to or contemporaneous with the execution of a written agreement is admissible to establish the meaning of the written contract. *Rufkahr Constr. Co. v. Weber*, 658 S.W.2d 489, 497 (Mo.App.1983). The only mention of whether the product is to be "textured" is found on defendant's Exhibit A, an informational sheet given by Stanfill to Werntz during negotiations. Both Werntz and Stanfill testified that the relevant notations found in the left-hand corner of that exhibit were written by Stanfill. They include the words: "Painted two sides, woodgrain texture." The court was correct when it allowed parol evidence to be presented to the jury with respect to the meaning of the terms "Aluminum Products Enterprise" panel and trim section.

Werntz prepared the ambiguous written agreement. Plaintiff points to a rule of contract construction that directs that ambiguity is to be construed against the drafter. Nevertheless, this ambiguity need not be construed against Werntz. Plaintiff's proffered rule of construction only applies when other means of construction fail and there is an absence of other evidence to show what the parties intended. *Berman v. Berman*, 701 S.W.2d 781, 788 (Mo.App. 1985); *N.B. Harty Gen. Contr., Inc. v. West Plains Bridge & Grading Co.*, 598 S.W.2d 194, 197 (Mo.App.1980). There was sufficient evidence in this case for the jury to determine what the parties intended; thus, the rule is inapplicable.

Plaintiff's second and third allegations of error concern Werntz' verdict-directing instruction. These points are not properly preserved for our review. Plaintiff's brief fails to comply with Rule 84.-04(e). The full text of the instruction is not included in the argument portion of the brief. Although we could decline to review the allegations of instructional error on this basis, we will examine the plaintiff's contentions on the basis of the instruction included in the legal file. The questioned instruction reads:

On the claim of Defendant CHARLES WERNTZ against Plaintiff for breach of contract, your verdict must be for Defendant CHARLES WERNTZ if you believe:

First, Defendant CHARLES WERNTZ and Plaintiff entered into an agreement whereby Defendant CHARLES WERNTZ agreed to design one set of roll forming dies suitable for continuous roll forming of textured panels and one set of roll forming dies suitable for continuous roll forming of trim and Plaintiff agreed to pay Defendant CHARLES

WERNTZ $2,350.00 plus the cost, if any, of additional labor and materials furnished as a result of changes in the specifications for the dies to be designed, and

Second, Defendant CHARLES WERNTZ performed his agreement, and

Third, Plaintiff failed to perform its agreement, and

Fourth, Defendant CHARLES WERNTZ was thereby damaged.

Plaintiff argues that the instruction allowed the jury to find that there was an agreement to design dies for "textured panels." In light of our determination that parol evidence was properly admissible to resolve the ambiguities in the contract, there was no error in submitting this instruction to the jury. "[W]here the terms of an agreement are in dispute the verdict-directing instruction must hypothesize the proponent's version of the agreement actually made." *Reed Stenhouse, Inc. v. Portnoy,* 642 S.W.2d 947, 951 (Mo.App.1982).

Plaintiff asserts that it is error to *assume* a disputed fact in a jury instruction. *George v. Gross & Janes Co.,* 634 S.W.2d 579, 582 (Mo.App.1982). The verdict-directing instruction offered by Werntz in this case is prefaced by the phrase "if you believe." It does not *assume* but rather hypothesizes the facts which follow. *See Price v. Seidler,* 408 S.W.2d 815, 824 (Mo. 1966). It submits ultimate factual issues and would not have misled the jury. *Id.*

▮ In its third point, Aluminum Products contends that Werntz' instruction was improper because it combined conflicting damage theories. It cites *Curators of the Univ. of Missouri v. Nebraska Prestressed Concrete Co.,* 526 S.W.2d 903 (Mo.App. 1975), and *Rodgers v. Levy,* 199 S.W.2d 79 (Mo.App.1947), for the proposition that a party has a choice of standing on an express contract or of suing in quantum meruit for the value of labor and materials furnished. Nonetheless, these cases are inapplicable. Werntz was not seeking to recover on a theory of quantum meruit. He was seeking damages for the breach of both the written agreement and a subsequent oral agreement concerning work not covered by the written agreement. Defendant Werntz' verdict-director and his damages instruction do not attempt to submit a quantum meruit theory. The verdict-director is in the form of MAI 26.06 [2] (for breach of a bilateral contract when both the terms of the contract and its breach are in issue) and not in the form of MAI 26.05 (for quantum meruit). Although it may have been improper to submit both contracts in one verdict-director rather than in two separate instructions, the plaintiff suffered no prejudice as a result. Unless prejudice is shown, reversal for instructional error is unwarranted. *Crabb v. Mid-American Dairymen, Inc.,* 735 S.W.2d 714, 718 (Mo. banc 1987). The jury verdict assessed the damages suffered by Werntz at $2050. This is exactly equal to the contract price of $2,350 less $300, the amount that Werntz testified that he had previously been paid. It is clear that the jury awarded no damages with respect to the alleged oral contract to pay the cost of materials and labor involved in changing the design to accommodate smooth panel.

Plaintiff's final allegation concerns the trial court's denial of its motion for a new trial. Plaintiff contends that the verdict was against the weight of the evidence because the evidence "overwhelmingly supported the proposition that [Werntz] breached his contract...."

▮ When a motion for a new trial has been overruled, we review to determine if there was substantial evidence to support the verdict. *Anderson v. Mutert,* 619 S.W. 2d 941, 946 (Mo.App.1981). The evidence is viewed in the light most favorable to the jury's verdict. *Id.* As plaintiff concedes in its brief, "[t]he issue as to whether the verdict was against the weight of the evidence is broadly affected by whether the admission of parol evidence was properly permitted." Having determined that the trial court did not err in admitting the parol evidence, we find sufficient evidence on the record to support the jury's verdict.

The judgment of the trial court is affirmed.

**2.** See *Hall v. Cooper,* 691 S.W.2d 507, 509 n. 1  (Mo.App.1985), for a similar verdict-director.

STEPHAN and DOWD, JJ., concur.