**SMITH MOORE & CO., Respondent,**

v.

**J.L. MASON REALTY & INVESTMENT, INC., and C.F. Services, Inc., Appellants.**

Nos. 58146, 58147.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 6, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1991.

Application to Transfer Denied
Nov. 19, 1991.

John L. Davidson, St. Louis, for appellants.

Joseph H. Mueller, Robyn G. Fox, St. Louis, for respondent.

CRIST, Judge.

J.L. Mason Realty & Investment, Inc. (J.L. Mason) and C.F. Services, Inc. (C.F. Services) appeal a judgment in favor of Smith, Moore & Company (Smith, Moore) on Smith, Moore's petition for breach of contract and damages. The jury returned a verdict against J.L. Mason and C.F. Services in the amount of $143,650.00. We affirm.

The facts of this case reveal: Sugarpines Venture, Limited (Sugarpines project) was a joint venture between J.L. Mason and C.F. Services. This joint venture was formed to construct and operate the Sugarpines apartment project in North St. Louis County.

In May, 1985, William Sheahan, an officer of C.F. Services, contacted Martin Crowe, Chairman of the Board and Chief Executive Officer of Smith, Moore. Sheahan told Crowe he was interested in investi-gating methods to finance the construction of the Sugarpines project. On May 9, 1985, Martin Crowe met with William Sheahan, Tim Sheahan (President of C.F. Services) and other representatives of J.L. Mason. Crowe recommended using bonds guaranteed by the Federal National Mortgage Association (Fannie Mae) to finance the project. On May 29, 1985, the parties met again. Representatives of J.L. Mason and C.F. Services informed Crowe that the joint venture had agreed that bonds guaranteed by Fannie Mae would be the best way to finance the project. At this meeting, Jimmie New (President of J.L. Mason) requested Crowe to submit a written agreement to the joint venture detailing Smith, Moore's commitment and responsibilities with respect to the financing of the project and the joint venture's responsibilities.

On May 24, 1985, Smith, Moore sent a written agreement to the Sugarpines venture. The May 24, 1985, agreement stated the following:

Smith, Moore & Co., does hereby propose and agree to purchase the above described bonds subject to the following terms and conditions:

(1) The Bonds shall be secured ... by ... 'Fannie Mae' pursuant to its Multifamily Tax Exempt Financing Plus Program or secured in such other manner as is mutually agreeable to Sugarpines Venture, Ltd., and Smith, Moore & Co.

(2) The Bonds shall be issued in such amount, shall mature on such date ... shall bear such rate ... of interest and shall provide for such other provisions as shall be mutually agreeable....

(3) Smith, Moore & Co., shall purchase the Bonds at an underwriter's discount of 2% from the initial public offering prices. Smith, Moore & Co. will be obligated to purchase all such Bonds ... if any such Bonds are purchased.

(4) Costs associated with the issuance and sale of the Bonds shall be paid from the proceeds of the sale of the Bonds or by Sugarpines Venture, Ltd. Such costs include, but not limited to, fees of Bond counsel; fees of the Trustee; fees and costs of any bond rating service; costs of

printing of the Bonds and any documents relating to the Bonds ... any expenses incurred in the verification of the cash flows relating to the Bonds ... and any fees or charges required to be paid to the [Industrial Development Authority of St. Louis, Missouri].

If the foregoing proposal is satisfactory to [the joint venture], please so indicate by signing and returning to Smith, Moore & Co., a copy of this letter, whereupon this proposal and your acceptance will then constitute our agreement with respect to the underwriting of the Bonds.

At the close of the letter, Martin Crowe signed for Smith, Moore in his capacity as Chairman of the Board. The letter was "accepted and agreed this 30th day of May, 1985" by the signing of Jimmie W. New for J.L. Mason in his capacity as Division President and by Timothy D. Sheahan for C.F. Services in his capacity as President.

Further communication between Smith, Moore and the joint venture established that the financing should be secured by December, 1985.

In November, 1985, the joint venture was notified by phone that the Federal National Mortgage Association would insure the project for $11,050,000.00. This was lower than the amount of $14,000,000.00 as discussed by the parties earlier.

That same month, Martin Crowe discovered that the joint venture was utilizing the services of Stifel, Nicholaus (another St. Louis investment banking company) to secure and underwrite the financing of the joint venture. When confronted with questions about the involvement of Stifel, Nicholaus, Jimmie New and William Sheahan informed Smith, Moore that despite Stifel, Nicholaus' involvement, Smith, Moore would still be included in the underwriting of the bonds.

However, in late December, 1985, Smith, Moore was informed that it would not be allowed to participate further in the arranging of the financing of the project. On December 23, 1985, Martin Crowe wrote a letter to both J.L. Mason and C.F. Services stating the joint venture had breached the written agreement dated May 24, 1985.

Smith, Moore brought this action for breach of contract against J.L. Mason and C.F. Services seeking money damages. The jury returned a verdict against both J.L. Mason and C.F. Services in the amount of $143,650.00. Thereafter, the trial court denied J.L. Mason's and C.F. Services' post-trial motions. Both appeal.

In their first point, J.L. Mason and C.F. Services argue the trial court erred in denying their motions to dismiss because Smith, Moore failed to state in its petition all the essential elements of a breach of contract claim.

In determining whether Smith, Moore stated a cause of action, we assume every pleaded fact as true and take every favorable inference in favor of Smith, Moore which may reasonably be drawn from the facts pleaded. *Connell v. Whiteley*, 779 S.W.2d 781, 782–783 [1] (Mo.App.1989). If the facts pleaded and the reasonable inferences to be drawn show any ground that would entitle Smith, Moore to relief, the petition should not have been dismissed. *Id.*

■ Smith, Moore was required to plead the following elements to state a cause of action for breach of contract: (1) an agreement between parties capable of contracting; (2) mutual obligations arising thereunder with respect to a definite subject matter; (3) a valid consideration; (4) part performance by one party and prevention of further performance by the other; and (5) damages measured by the contract and resulting from its breach. *Berra v. Papin Builders, Inc.*, 706 S.W.2d 70, 73–74 [3, 4] (Mo.App.1986).

■ It is J.L. Mason's and C.F. Services' contention that there was no contract between the parties because the May 24, 1985 letter left open essential terms for future determination. However, as shown above in the facts, the May 24, 1985 letter clearly set forth that Smith, Moore was to arrange financing for the Sugarpines project. The agreement set forth the party issuing the bonds; the purpose of the issuance of the bonds; the terms and conditions under which financing would be provided; the

parties to the joint venture; the security for such bonds; the discount rate applicable to the purchase; included a provision of costs for: fees of bond counsel, fees of the trustee, fees and costs of any bond rating service, costs of printing the bonds and documents relating thereto; expenses incurred in the verification of cash flow as relating to the bonds and any fees paid to the industrial development authority. Furthermore, the letter stated: "If the foregoing proposal is satisfactory to [the joint venture], please so indicate by signing and returning to Smith, Moore & Co., a copy of this letter, whereupon this proposal and your acceptance will then constitute our agreement with respect to the underwriting of the Bonds." All parties signed the letter.

Although by necessity there were outstanding items to be decided in the future, the parties did agree that Smith, Moore would arrange the financing for the Sugarpines project and would in turn receive a two percent underwriter discount of the amount arranged to be financed. The fact that some terms of the written agreement were not capable of ascertainment at the time the agreement was entered into and these precise terms were to be determined by mutual agreement in the future when they became ascertainable did not make the contract unenforceable. *See Allied Disposal v. Bob's Home Service*, 595 S.W.2d 417, 420 [5] (Mo.App.1980). This point is denied.

◼ In defendants' second point, they contend the trial court erred in refusing to grant their motion for a directed verdict because the evidence did not show the parties had mutually agreed to the essential terms of a contract to provide financing including: the principal amount to be borrowed, the due date, the rate of interest, the security for the loan and the date which the loan was to be repaid.

◼ In determining if Smith, Moore made a submissible case, we must regard the evidence in the light most favorable to Smith, Moore, giving Smith, Moore the benefit of all reasonable inferences and disregarding the defendants' evidence except insofar as it aids Smith, Moore's case. *State Farm Mut. Auto. Ins. Co. v. Weber*, 767 S.W.2d 336, 338 [1, 2] (Mo.App.1989).

There is no question but that Smith, Moore presented sufficient evidence to establish breach of contract by J.L. Mason and C.F. Services. Smith, Moore was required to show an agreement, mutual obligations with respect to a definite subject matter, consideration, part performance by Smith, Moore and defendants' prevention of further performance by Smith, Moore, and Smith, Moore's damages as a result of the breach. *Berra*, 706 S.W.2d at 73–74 [3, 4].

The evidence presented shows the May 24, 1985 letter set forth an agreement between the parties that Smith, Moore would arrange for the financing for the joint venture's Sugarpines project and receive a 2% underwriter's discount from the initial public offering prices. Martin Crowe testified that by November, 1985, he had arranged for the financing of the Sugarpines project by the Federal National Mortgage Association for $11,050,000.00. Martin Crowe also testified he learned in November 1985, that another investment banking firm would be arranging the financing for the project. In December, 1985, Smith, Moore learned it would not be allowed to participate further in arranging the financing for the Sugarpines project due to the action of J.L. Mason and C.F. Services utilizing another firm. Smith, Moore was unable to complete performance of its obligation under the May 24, 1985 agreement due to the breach of defendants. The agreement set forth the responsibilities of the parties and defines the compensation due Smith, Moore for its services under the contract. Martin Crowe testified Smith, Moore did not receive compensation. There was sufficient evidence presented to establish a breach of contract by defendants. This point is denied.

◼ J.L. Mason and C.F. Services next complain the trial court erroneously allowed Martin Crowe to testify regarding the lost profits suffered by Smith, Moore as a result of defendants' breach. They contend Smith, Moore was required to

prove the lost profits by the best available evidence which would be the profits made on other similar transactions not by an estimate as to the amount of lost profits.

■ Where damages are in the nature of lost profits, all that can be required is to produce all relevant facts tending to show the extent of damages and one is not excused for a breach of contract resulting in damages simply because those damages may not be established with certainty. *Gasser v. John Knox Village,* 761 S.W.2d 728, 731 [1] (Mo.App.1988). Further, the requirement that damages be shown with certainty is on the fact of damages and not on the particular amount. *Id.*

In *Aluminum Prod. Ent. v. Fuhrmann Tooling,* 758 S.W.2d 119, 122 [2-4] (Mo. App.1988), the president of Aluminum Products Enterprise testified as to damages sustained by Aluminum Products as a result of breach of contract by Fuhrmann Tooling. The president's testimony was based on his personal knowledge of business operations. Fuhrmann Tooling objected that a proper foundation had not been laid as to damages because the best available evidence would be actual records. Our court stated: "The best evidence rule does not apply to exclude evidence based on personal knowledge even if the documents would have provided some of the same information.... The testimonial evidence was sufficient to provide the trier of fact with a rational basis for estimating damages to the plaintiff, including lost profits." *Id.,* citing *Rush Farms, Inc. v. Ralston Purina Co.,* 689 S.W.2d 671, 682 (Mo.App.1985); and *Central & Southern Truck Lines v. Westfall GMC Truck, Inc.,* 317 S.W.2d 841, 852–853 (Mo.App.1958). It was not erroneous for the trial court to allow Martin Crowe to testify as to Smith, Moore's lost profits. Point denied.

■ In their fourth point, defendants contend the trial court improperly allowed Smith, Moore to read parts of the deposition of Jimmie New because although Jimmie New was president of J.L. Mason from March 1984 to March 1986, he was not president of J.L. Mason at the time he was deposed.

J.L. Mason and C.F. Services have failed to show in either their points relied on or the argument portion of their brief wherein and why any such evidence was prejudicial to them. Jimmie New was president of J.L. Mason during all relevant times to the making and breach of the contract. The mere fact that Jimmie New may or may not have been authorized to bind the defendants at the time of the taking of the deposition is not sufficient for reversal without facts showing wherein and why defendants were prejudiced. Rule 84.04(d) and (e). Point denied.

■ Defendant's next point takes issue with the trial court submitting to the jury Smith, Moore's verdict-directing instruction. The submitted verdict director required a finding for Smith, Moore if the jury found:

"[P]laintiff and defendants entered into a written agreement whereby plaintiff agreed to provide financing for defendants for ... [the] Sugarpines Venture, Ltd., and defendants agreed to allow plaintiff to purchase bonds for resale to provide such financing and to pay plaintiff a commission ... plaintiff was ready, willing and able to perform ... defendants refused to allow plaintiff to provide financing ... because of such refusal of defendants contractual obligations were not performed ... because of defendants' refusal ... plaintiff was unable to perform ... plaintiff was thereby damaged...."

We disagree with defendants' contention that M.A.I. 26.06 was the proper verdict director to be submitted because M.A.I. 26.06 only addresses a situation where plaintiff fully performed. Here, Smith, Moore was prevented from performing by defendants. There is no applicable M.A.I. The submitted verdict director was patterned after the instruction given in *Levey v. Roosevelt Federal S. & L. Ass'n of St. Louis,* 504 S.W.2d 241, 248–249 [11, 12] (Mo.App.1973). In *Levey,* plaintiff brought an action for breach of contract alleging defendant, by breaching the contract, prevented plaintiff from performing all obli-

gations under the contract. *Id.* The instruction in *Levey*, modified after M.A.I. 26.02, was approved on appeal despite defendants' objection. *Id.* We find no valid reason in defendants' brief as to why the giving of this instruction was reversible error. This point is denied.

■ Finally defendants propose the trial court erred in giving Smith, Moore's damage instruction because this instruction did not correctly specify the measure of damages for the lost profits which Smith, Moore claimed it lost.

The submitted damage instruction based on M.A.I. 4.05 read as follows: "If you find in favor of plaintiff you must award plaintiff such sum as you believe plaintiff and defendants agreed upon as a commission."

Defendants contend the submitted damage instruction failed to instruct the jury that Smith, Moore's lost profits were to be measured by the difference between what Smith, Moore would pay for the bonds and the amount for which it would have been paid when it resold the bonds.

The jury awarded Smith, Moore $143,650.00. The amount Smith, Moore was able to insure through the Federal National Mortgage Association for defendants' project was $11,050,000.00. It is not disputed that the parties had agreed to a 2% underwriter's discount. If the jury had awarded damages for a 2% underwriter's discount of the $11,050,000.00 to Smith, Moore, the damages would have been $221,000.00.

The jury did have before it evidence that Smith, Moore did not incur the cost of buying and reselling the bonds. A party is entitled to have an instruction on issues pleaded and supported by the evidence on such issues which have been tried voluntarily. *S.P. Personnel Assoc., Etc. v. Hospital B. & E. Co.*, 525 S.W.2d 345, 350 [12–16] (Mo.App.1975). However, it seems evident by the discrepancy in the amount awarded and the amount of 2% underwriter's discount of $11,050,000.00 that the jury took into consideration the costs Smith, Moore did not incur because it did not have to buy and resell the bonds. We find no prejudice to defendants in the submission of Smith, Moore's damage instruction based on M.A.I. 4.05. *See S.P. Personnel Assoc.*, 525 S.W.2d at 350 [12–16]. This point is denied.

Judgment affirmed.

GARY M. GAERTNER, P.J., and AHRENS, J., concur.