Wilson L. BLACKWELDER and Edna Blackwelder, Appellants,

v.

Michael T. BLISSETT and Leisa M. Blissett, Respondents.

No. 18479.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 15, 1993.

Francis J. Siebert, Scott City, for appellants.

Marcia A. Mulcahy, Limbaugh, Russell, Payne & Howard, Cape Girardeau, for respondents.

CROW, Judge.

Appellants, Wilson L. Blackwelder and Edna Blackwelder, leased premises to Respondents, Michael T. Blissett and Leisa M. Blissett, for a term beginning January 18, 1989, and ending January 19, 1992. Respondents operated a day care center on the premises. When the term expired, Respondents surrendered possession to Appellants.

A few months later, Appellants sued Respondents for $9,000, averring Respondents failed to return the premises to Appellants in as good condition as when Respondents received possession, and Respondents committed waste on the premises. A non-jury trial resulted in a judgment for Respondents. This appeal followed.

Appellants' two points relied on read:

**I.**

The court erred as a matter of law in granting judgment for the Respondents because the undisputed testimony was that Respondents failed to restore the leased premises to the condition in which they were prior to the time the Respondents entered into possession, as required by the lease agreement.

**II.**

The trial court erred in granting judgment in favor of Respondent [sic] in that said judgment was not supported by sufficient evidence.

Rule 84.04(d) [1] reads:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous....

The purpose of the rule and the necessity of obeying it are set forth in the venerable case of *Thummel v. King,* 570 S.W.2d 679, 684–88 (Mo. banc 1978).

▪ Appellants' point II presents the unadorned assertion that the judgment was not supported by sufficient evidence. The point supplies no clue as to wherein and why the evidence was insufficient. A point relied on stating there was insufficient evidence to support a judgment, without setting forth wherein and why that is so, presents nothing for appellate review. *Phillips v. Phillips,* 819 S.W.2d 413, 416[2] (Mo.App.S.D.1991); *Best v. Culhane,* 677 S.W.2d 390, 394[4] (Mo.App.E.D.1984); *Tripp v. Harryman,* 613 S.W.2d 943, 950[12] (Mo.App.S.D.1981).

▪ Furthermore, the burden was on Appellants to prove their claim against Respondents. *Chandler v. New Moon Homes, Inc.,* 418 S.W.2d 130, 135[4] (Mo. banc 1967); *Show–Me Restoration Services v. Harlan,* 778 S.W.2d 350, 351 (Mo.App.E.D.1989). As explained in *Phillips v. Phillips,* 443 S.W.2d 144, 145–46 (Mo. banc 1969), because a defendant does not have the burden of proof, he need not present evidence to prevail. Therefore, a contention that a judgment for a defendant on a plaintiff's claim is not supported by sufficient evidence presents no reason for reversal.

1. Rule references are to Missouri Rules of Civil    Procedure (1993).

■ Turning to Appellants' point I, we observe it is afflicted with the same infirmity as point II in that it fails to satisfy the "wherein and why" requirement of Rule 84.-04(d). Nowhere in point I do we find any hint as to wherein and why the testimony demonstrated Respondents failed to restore the leased premises to the condition in which they were prior to the time Respondents entered into possession. Moreover, the point provides no inkling as to what that condition was.

Endeavoring to extract the import of the point from the argument portion of the brief, we espy complaints about (a) holes in the walls, (b) doors torn out and thrown outside, (c) front door torn up, (d) interior doors missing, (e) a hole through a wall between the living room and a hallway, (f) a storage shed that was unusable and had to be removed, (g) missing kitchen cabinets, (h) broken windows, (i) crayon marks on walls, (j) a missing air conditioner, and (k) a roof leak in a bathroom.

Regarding complaint "a," Respondent Leisa Blissett testified that when Respondents vacated the premises, the walls were in good condition with no dents or scratches. Regarding complaint "b," Leisa testified Respondents left two doors outside, against the building, because they had been stored in the shed and her children washed them off in preparation for rehanging. Regarding complaint "c," Respondent Michael Blissett testified that to meet state requirements, entry doors had to swing from the outside. The storm door that was there when Respondents took possession swung from the inside. Michael took it down and got rid of it. He added that when the lease expired, he bought a new storm door for Appellants to install.

Regarding complaint "d," the doors to which it pertains are apparently those referred to in complaint "b." Regarding complaint "e," Respondent Leisa Blissett testified she obtained permission from Appellant Edna Blackwelder to alter a wall by cutting out a portion to create a rectangular opening. We infer from Leisa's testimony that the purpose was to enable day care personnel to see the children when they were on the opposite side. A photograph shows a rectangular opening neatly trimmed with painted molding, not an irregular "hole."

Regarding complaint "f," Leisa testified that when Respondents took possession, Appellant Edna Blackwelder showed her the storage building and said it was old and worn. It had a wood floor on the surface of the ground, and "the wood had started to get soft." According to Leisa, wind would blow the doors off and she would have to put them back on.

Regarding complaint "g," Leisa testified there were three cabinets in the kitchen when Respondents took possession. Leisa recounted that Appellant Edna Blackwelder gave her one of the cabinets, an antique, but Leisa left it on the premises when Respondents surrendered possession. Leisa also left one of the other cabinets when Respondents departed. She gave away the third cabinet.

Regarding complaint "h," Respondents presented testimony by an insurance agent who sold them the policy for the day care center. The agent testified he was on the premises between eight and ten times during the term of the lease. His last visit was in January, 1992, the final month of Respondents' occupancy. He saw no broken windows. Pertinent to complaints "a" and "k," the agent testified he noticed no wall holes or roof leaks. Neither of the Respondents testified specifically about windows; however, Leisa Blissett testified that the day Respondents surrendered possession, Appellants' son, Jim Jackson, who handles Appellants' business affairs, walked through the premises and "was real happy and pleased with the condition."

Regarding complaint "i," the insurance agent testified he saw no "markings" on the walls. A realtor testified she was on the premises shortly before Respondents moved out and saw no damage to the walls.

Regarding complaint "j," Respondent Leisa Blissett testified that when Respondents leased the premises there were two air conditioners, one in the east wall and one in the west wall. One later caught fire. Leisa had it repaired. In June, 1991, the compressor on the other one failed. Leisa testified she

talked with Appellant Edna Blackwelder, who expressed surprise that the air conditioners had lasted that long. According to Leisa, Edna said that if she wanted an air conditioner, she (Leisa) would have to get one. Leisa testified she purchased an air conditioner for $600 or $700, which she took with her when Respondents surrendered possession of the premises. Respondents left the inoperable air conditioner on the premises.

Regarding complaint "k," Leisa testified she once noticed a "little orange spot" on the ceiling in the girls bathroom. Leisa notified the realtor and "someone came and patched the hole—or whatever it is." Leisa avowed there was no roof leak at the time Respondents surrendered possession.

Appellants presented evidence that it was necessary to purchase materials totaling approximately $3,000 to repair the premises after Respondents departed. However, some $1,000 of that was for replacement carpet.

Respondents presented evidence that the carpet was worn when the lease commenced. The realtor testified that any deterioration in the condition of the carpet during Respondents' occupancy was "just from normal wear." Another witness for Respondents, a woman with experience with day care centers and rental property, was on the premises January 21, 1992, when Respondents were preparing to vacate. Asked about the condition of the carpet, the witness testified it was consistent with the type of wear and tear she would expect in a day care business. The requirement in the lease that Respondents return the premises to Appellants in as good condition as received had an exception for "ordinary wear and tear."

Appellants point out that Respondent Leisa Blissett admitted she removed "an old heater" from a bedroom. This left a small hole in the wall, inferably through which a gas line had run to the heater. Leisa testified the heater had to be removed in order for the day care center to be licensed, as it "wasn't under regulations."

We fail to see how this constitutes alteration of, or waste to, the premises. Apparent-ly, the hole was there at the beginning of the lease. Nothing in the record suggests Respondents enlarged the hole during their occupancy.

Appellants also presented testimony about a doorway Respondents made "between the kitchen and the front." Respondent Leisa Blissett testified she obtained permission from Appellant Edna Blackwelder to do this. The lease granted Respondents permission to make alterations to the premises upon obtaining approval of Appellants.

All of Leisa's testimony about her conversations with Edna Blackwelder was uncontradicted, as Appellants did not attend the trial. According to Appellants' lawyer, this was because of their age and infirmities.

■ Appellants argue the lease required Respondents, at the end of the term, to restore the premises to their condition prior to alterations unless Appellants instructed Respondents otherwise. Assuming, without deciding, that the lease imposed that duty, we find no evidence as to the amount of damage, if any, Appellants suffered because Respondents failed to undo the alterations. Appellants' brief suggests the measure of damage is the difference between the value of the premises before the alterations and the value afterward. However, Appellants do not cite any evidence supporting a finding that the value of the property was diminished by the alterations. Alternatively, Appellants say damages may be measured by the cost of restoring the premises to the former condition, but Appellants do not point to any evidence of such cost.

Indeed, nowhere in their brief do Appellants fix a dollar amount of their alleged damage and inform us as to how the evidence supports it. Their brief ends with the prayer: "Appellants respectfully request this honorable court reverse and remand this case to the trial court instructing it to enter a judgment for the damages suffered by the Appellants, or that this honorable court on its own accord award Appellants the damages supported by the evidence." We are left to speculate about the figure Appellants believe the evidence supports.

In this judge-tried case, credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of any witness' testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988). Where, as here, the trial court makes no findings of fact, all fact issues are deemed found in accordance with the result reached. Rule 73.01(a)(2); *Pan American Realty Corp. v. Forest Park Manor, Inc.*, 431 S.W.2d 144, 147[3] (Mo.1968); *Braeshire Condominium Board of Managers v. Brinkmeyer*, 841 S.W.2d 217, 219[3] (Mo.App.E.D.1992).

Assuming we have divined the thrust of Appellants' first point, we find no merit in it. Essentially, Appellants' position is that their evidence was more credible than Respondents' evidence. That contention is futile here. We do not substitute our judgment for that of the trial court on credibility issues. *Zweemer v. Cantrell*, 823 S.W.2d 531, 533–34[4] (Mo.App.S.D.1992); *Strauss v. Strauss*, 755 S.W.2d 742, 743[1] (Mo.App.E.D.1988); *State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65[5] (Mo.App.E.D.1987).

The trial court could have reasonably found Respondents' evidence more credible than Appellants'; that Appellants failed to prove the doorway and wall opening installed by Respondents reduced the value of the premises; and that any deterioration in the condition of the premises during Respondents' occupancy, apart from ordinary wear and tear, was so minimal that an award of damages would be speculative. While damages need not be established with absolute certainty, reasonable certainty is required as to both existence and amount, and the evidence must not leave the matter to speculation. *Aluminum Products Enterprises, Inc. v. Fuhrmann Tooling and Manufacturing Co.*, 758 S.W.2d 119, 121[1] (Mo.App.E.D. 1988); *Haggard v. Mid–States Metal Lines, Inc.*, 591 S.W.2d 71, 77[9, 10] (Mo.App.W.D. 1979); *Sides Construction Co., Inc. v. Arcadia Valley R–II School District*, 565 S.W.2d 761, 768[9] (Mo.App.E.D.1978).

The burden of demonstrating error is on Appellants. *State ex inf. Ashcroft, ex rel. Plaza Properties, Inc. v. City of Kansas City*, 687 S.W.2d 875, 876[2] (Mo. banc 1985). We hold Appellants' first point, to the extent we have been able to seine its meaning from the argument following it, fails to do so.

Judgment affirmed.

FLANIGAN, P.J., and GARRISON, J., concur.