

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| MO CANN DO, INC., | ) | *Opinion issued April 2, 2024* |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC100172 |
| | ) | |
| MISSOURI DEPARTMENT OF HEALTH | ) | |
| AND SENIOR SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY**
The Honorable Thomas C. Albus, Judge

MO CANN Do, Inc. ("MCD") appeals an administrative hearing commission ("AHC") decision determining MCD was ineligible for a medical marijuana cultivation facility license. Because MCD's application for licensure did not include a certificate of good standing demonstrating its authorization to operate as a business in Missouri, the application failed to meet the minimum standards for licensure. The circuit court's judgment affirming the AHC's decision, therefore, is affirmed.

## Background

In 2018, Missouri voters amended the Missouri Constitution to legalize the possession and use of marijuana for medical purposes.[1] The amendment gave the Department of Health and Senior Services ("DHSS") the authority to promulgate rules necessary for the proper regulation and control of marijuana for medical use, including the authority to grant or refuse state licenses for the cultivation of marijuana for medical use. Pursuant to the constitutional amendment, DHSS promulgated rules and regulations including the minimum standards for cultivation licensure.[2] These minimum standards required, among other things, an applicant for licensure to provide a certificate of good standing from the secretary of state to demonstrate the applicant's authority to operate as a business in Missouri. Once an applicant met the minimum standards, DHSS considered additional evaluation criteria under a numerical scoring system to rank applicants for the limited number of licenses DHSS was authorized to issue.

In 2019, MCD applied for a medical marijuana cultivation license. Included in its application was a document titled "CERT-OF-GOOD-STANDING" that was not in substance a certificate of good standing but, instead, MCD's certificate of incorporation from the state of Missouri. DHSS rejected the application as incomplete and sent MCD a

---

[1] In 2022, Missouri voters again amended the constitution legalizing recreational use of marijuana. This opinion does not address the 2022 amendment or regulations promulgated thereunder.

[2] All references to DHSS regulations governing medical marijuana licensure are to those in effect in 2019. These regulations were repealed following the 2022 constitutional amendment legalizing recreational use of marijuana in addition to medical use.

deficiency letter. The letter notified MCD of several deficiencies in its application but failed to include the fact that MCD did not submit a certificate of good standing. MCD resubmitted its application addressing the deficiencies referenced in the DHSS letter, but MCD's resubmitted application again included its certificate of incorporation instead of a certificate of good standing.[3] DHSS denied MCD's application for failure to meet the minimum standards for licensing.

MCD appealed to the AHC. The AHC granted a summary decision in DHSS' favor, concluding MCD was ineligible for a medical marijuana cultivation facility license based on its application. The AHC found MCD failed to submit a certificate of good standing as required by DHSS regulation and, thereby, failed to meet the regulatory minimum standards for licensure. The AHC rejected MCD's argument that DHSS was equitably estopped from denying MCD's application, finding it had no authority over equitable claims for relief.

MCD petitioned the circuit court for judicial review of the AHC's decision, which the circuit court affirmed. MCD then appealed to the court of appeals. After an opinion by the court of appeals, this Court granted transfer.[4] On appeal, MCD argues the AHC's decision finding MCD failed to meet the minimum standards for licensure is not supported by competent and substantial evidence, is arbitrary and capricious, and is unauthorized by law. It asks this Court to vacate the AHC's decision and remand to the AHC to determine

---

[3] MCD's second submission retitled the certificate of incorporation document as "MCDO0001 Certificate of Good Standing."

[4] This Court has jurisdiction under article V, section 10 of the Missouri Constitution.

3

if MCD is otherwise eligible to receive a medical marijuana cultivation license.

## Standard of Review

"Article V, section 18 of the Missouri Constitution articulates the standard of judicial review of administrative actions." *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009). "On appeal, this Court is charged with determining whether the agency actions 'are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.'" *Id.* (quoting Mo. Const. art. V, sec. 18).

Moreover, "all final decisions of the administrative hearing commission shall be subject to judicial review as provided in and subject to the provisions of sections 536.100 to 536.140[.]" Section 621.145.[5] "Section 536.140.2 lists several criteria for judicial review of an agency decision." *Stone v. Mo. Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 19 (Mo. banc 2011). This Court reviews whether the agency action:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

---

[5] All statutory references are to RSMo 2016 unless otherwise indicated.

Section 536.140.2.

"Consistent with the constitutional standard, section 536.140.2 provides for appellate review of the administrative ruling, not that of the circuit court[.]" *Lagud v. Kan. City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004); *see also Stone*, 350 S.W.3d at 19 (citing section 536.140.2) ("An appellate court reviews the decision of the agency rather than the decision of the circuit court." ). "For purposes of review, the action of the commission and the order, if any, of the agency shall be treated as one decision." Section 621.145. "Under article V, section 18 and section 536.140.2, the standard of review for administrative decisions is 'whether, considering the whole record, there is sufficient competent and substantial evidence to support the agency's decision.'" *Stone*, 350 S.W.3d at 20 (alteration omitted) (quoting *Albanna*, 293 S.W.3d at 428).

### The record contains competent and substantial evidence MCD's application failed to meet a minimum standard for licensure

In its first point relied on, MCD argues the AHC's conclusion finding it failed to meet a minimum standard for licensure is not supported by competent and substantial evidence. DHSS regulation provided the "minimum standards" for obtaining a medical marijuana cultivation facility license. 19 C.S.R. 30-95.025(4). One such minimum standard was an applicant's "[a]uthorization to operate as a business in Missouri[.]" 19 C.S.R. 30-95.025(4)(A)1. DHSS regulation provided this minimum standard "can be met by providing all material required by 19 CSR 30-95.040(2)[.]" 19 C.S.R. 30-95.025(4)(A). 19 C.S.R. 30-95.040(2) provided the application "shall include at least the following

information … a certificate of good standing from the Missouri Office of the Secretary of State[.]"

It is undisputed in this case that MCD's application failed to include a certificate of good standing. MCD contends 19 C.S.R. 30-95.025(4)(A)1 implied the minimum standard may have been met in other ways. It notes 19 C.S.R. 30-95.025(4)(A)1 merely provided an applicant's authorization to operate as a business in Missouri "can" be met by providing all material required by 19 C.S.R. 30-95.040(2) (i.e. the certificate of good standing). MCD argues its application, by providing its certificate of incorporation, satisfied the standard requiring proof of authorization to operate as a business in Missouri.

Regardless if a certificate of incorporation is proof of authorization to do business as MCD contends,[6] MO CANN Do's "can" argument lacks merit. 19 C.S.R. 30-95.025(4)(A)1 simply cross-referenced 19 C.S.R. 30-95.040(2) to provide the applicant with the information necessary to submit a complete application meeting the minimum standards for licensure. The former provided minimum standards pertaining to business authorization, ownership, and location of a proposed facility; the latter delineated documentation corresponding to these requirements. Dispositive here, 19 C.S.R.

---

[6] Multiple cases have remarked "the final determination of a corporation's right to do business is made when the Secretary of State issues a certificate of incorporation[.]" *Beavers v. Recreation Ass'n of Lake Shore Est., Inc.*, 130 S.W.3d 702, 709 (Mo. App. 2004); *see also Levey v. Roosevelt Fed. Sav. & Loan Ass'n of St. Louis*, 504 S.W.2d 241, 245 (Mo. App. 1973); *A.W. Mendenhall Co. v. Booher*, 48 S.W.2d 120, 122 (Mo. App. 1932); *Boatmen's Bank v. Gillespie*, 108 S.W. 74, 86 (Mo. 1907). And section 351.385 provides that "[e]ach corporation shall have power … [t]o conduct its business … within and without this state[.]" But section 351.076 differentiates between a corporation's mere existence and its authority to transact business in Missouri and provides the certificate of good standing is prima facie evidence of both.

30-95.040(2) required that an application "**shall** include **at least**" a certificate of good standing. (Emphasis added). When the language of a regulation is unambiguous, there is nothing to construe and courts will give effect to the language as written. *See Doe v. St. Louis Cmty. Coll.*, 526 S.W.3d 329, 336 (Mo. App. 2017). Because MCD did not include a certificate of good standing in its application as was required by regulation to demonstrate its authority to operate as a business in Missouri, MCD failed to meet the minimum standards for licensure. Point one is denied.

**The AHC's decision was not arbitrary, capricious, or unreasonable in finding DHSS did not waive the certificate of good standing requirement**

In its second point relied on, MCD argues the AHC's decision was arbitrary, capricious, and unreasonable in finding DHSS did not waive the certificate of good standing requirement given DHSS notified MCD of several deficiencies in its application but failed to include the fact that MCD did not submit a certificate of good standing. MCD contends that, because the AHC's decision was arbitrary, capricious, and unreasonable, this Court should vacate the decision finding MCD did not meet the minimum standards for a cultivation license.

DHSS regulations provided DHSS "will notify an applicant if an application is incomplete and will specify in that notification what information is missing." 19 C.S.R. 30-95.040(1)(B)4. DHSS regulations also provided DHSS may "waive, for good cause, provisions of this chapter on its own initiative or by request." 19 C.S.R. 30-95.025(2)(A). MCD reads these regulations in tandem to argue DHSS waived the certificate of good

7

standing requirement by failing to specify that MCD failed to submit a certificate of good standing with its application.

MCD's argument is creative, but 19 C.S.R. 30-95.025(2)(A) did not suggest DHSS could *implicitly* waive an application requirement, much less waive that requirement by failing to notify an applicant with specificity regarding information missing from its application. Rather, 19 C.S.R. 30-95.025(2)(A) contemplated affirmative waiver in which DHSS waived requirements "on its own initiative or by request." This did not happen, as DHSS denied MCD's application and never affirmatively waived the deficiencies therein.

Regardless, MCD is not entitled to its requested relief. MCD requests this Court vacate the AHC's decision finding MCD failed to meet a minimum standard for licensure. But, as explained more thoroughly above, MCD failed to submit a certificate of good standing and, therefore, did not meet the minimum standards. DHSS properly denied MCD's application for licensure. Point two is denied.

**DHSS is not estopped from denying MCD's application**

In its third and final point relied on, MCD argues DHSS, by failing to notify MCD that a certificate of good standing was missing from its initial application, was estopped from denying MCD's final application on that basis. "A party asserting estoppel [against a governmental agency] must prove all required elements of estoppel [ … ] to prevail." *Twelve Oaks Motor Inn, Inc. v. Strahan*, 110 S.W.3d 404, 408 (Mo. App. 2003) (internal quotations omitted). "These elements are: 1) a statement or act by the government entity inconsistent with the subsequent government act; 2) the citizen relied on the act; and 3) injury to the citizen." *Id.* (internal quotations omitted); *see Peerless Supply Co. v. Indus.*

8

*Plumbing & Heating Co.*, 460 S.W.2d 651, 665-66 (Mo. 1970) (setting forth three elements of estoppel). "In addition, the governmental conduct complained of must amount to affirmative misconduct." *Twelve Oaks*, 110 S.W.3d at 408 (internal quotations omitted).

However, "[t]he doctrine of equitable estoppel is rarely applied in cases involving a governmental entity, and then only to avoid manifest injustice." *Lynn v. Dir. of Revenue*, 689 S.W.2d 45, 48 (Mo. banc 1985); *see Twelve Oaks*, 110 S.W.3d at 408 ("Equitable estoppel may run against the state, but only whe[n] there are exceptional circumstances and a manifest injustice will result." (internal quotations omitted)). "Equitable estoppel is not applicable if it will interfere with the proper discharge of governmental duties, curtail the exercise of the state's police power or thwart public policy, and is limited to those situations where public rights have to yield when private parties have greater equitable rights." *Twelve Oaks,* 110 S.W.3d at 408 (internal quotations omitted).[7]

---

[7] The AHC found it had no authority over equitable claims for relief including equitable estoppel, citing *Soars v. Soars-Lovelace, Inc.*, 142 S.W.2d 866, 871 (Mo. 1940). This Court in *Soars* addressed an attempt by the Workmen's Compensation Commission to make an award to a person excluded by the Workmen's Compensation Act. In holding such an award outside the authority of the Workmen's Compensation Commission, the Court stated an administrative tribunal "is a creature of the Legislature and does not have any jurisdiction or authority except that which the Legislature has conferred upon it." *Id.* The Court held, "If the authority conferred could be enlarged by its own holdings of waiver, estoppel, or even by contract, the Commission could itself add to its own powers and create rights and duties beyond what the Legislature provided or intended." *Id.*

*Soars* remains good law, but is inapposite to MCD's claim on appeal. The issue here is not the AHC's power in equity or lack thereof. Appellate cases, including from this Court, hold the courts retain powers in equity including to grant equitable estoppel on appeal from an agency decision. *See Lynn*, 689 S.W.2d at 48-49 (addressing equitable estoppel on appeal from an AHC's decision); *Twelve Oaks*, 110 S.W.3d at 408 (addressing equitable estoppel in review of a tax commission decision); *State ex rel. Capital City Water Co. v. Mo. Pub. Serv. Comm'n*, 850 S.W.2d 903, 910 (Mo. App. 1993) (addressing an

9

MCD contends DHSS initially represented that MCD's application was satisfactory as it pertained to the inclusion of the certificate of good standing, which MCD asserts was inconsistent with DHSS' subsequent denial of MCD's application for failure to include said certificate. MCD claims it relied on these representations to its detriment. Accordingly, MCD claims DHSS is estopped from denying its application for failure to include a certificate of good standing and asks this Court to remand for the AHC to determine if MCD is otherwise eligible for a medical marijuana cultivation license.

This argument fails because it is generally inappropriate to estop governmental agencies tasked with administrating licensure in highly regulated industries. *See, e.g.*, *State ex rel. Letz v. Riley*, 559 S.W.2d 631 (Mo. App. 1977) (making permanent a writ prohibiting the circuit court from estopping a supervisor of liquor control from suspending or revoking certain liquor licenses); *Twelve Oaks*, 110 S.W.3d at 408 ("Equitable estoppel is not applicable if it will interfere with the proper discharge of governmental duties[.]" (internal quotation omitted)). Marijuana is a Schedule I controlled substance under both state and federal law. Section 195.017.2(5)(ff), RSMo Supp. 2023; 21 U.S.C. § 812, Schedule I (c)(10). According to state and federal law, controlled substances listed under Schedule I have a high potential for abuse, no accepted medical use in treatment and/or lack accepted safety for use in treatment under medical supervision. Section 195.017.1,

---

equitable estoppel claim in review of a public service commission decision); *see also State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 471-72 (Mo. banc 2004) (holding the Missouri Constitution vests legal and equitable jurisdiction in the courts). When the elements of equitable estoppel are met, a court may determine an AHC's decision is unauthorized by law.

RSMo Supp. 2023; 21 U.S.C. § 812(b)(1). Because both state and federal law deem Schedule I substances susceptible to dependency and abuse, such drugs are highly regulated to protect the public health. The marijuana industry, therefore, is certainly an industry that must be highly regulated.

Even if DHSS did not provide specific notice to MCD of the deficiency in its application, the State cannot be thwarted in its effort to enforce public policy and protect the public interest as it pertains to regulating the cultivation and use of marijuana. *C.f. Twelve* Oaks, 110 S.W.3d at 408 ("Equitable estoppel is not applicable if it will … thwart public policy[.]" (internal quotation omitted)); *Mahoney v. Doerhoff Surgical Servs.*, 807 S.W.2d 503, 507 (Mo. banc 1991) ("The preservation of the public health is a paramount end of the exercise of the police power of the state."). It is incumbent on DHSS to ensure MCD or other entities entering the marijuana industry follow the laws and regulations related to the industry so the public can remain safe. This includes ensuring entities seeking to cultivate marijuana in this state are authorized to do business in this state and comply with the regulations requiring a certificate of good standing be submitted with an application for licensure. Point three is denied.

## Conclusion

The AHC's decision finding MCD failed to meet a minimum standard for licensure is supported by competent and substantial evidence. This Court affirms the circuit court's judgment.

_____
W. Brent Powell, Judge

Russell, C.J., Fischer, Ransom, Wilson and
Gooch, JJ., concur. Broniec, J., not participating.